UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BENJAMIN FERNANDEZ, GUSTAVO
MARTINEZ, OSCAR LUZURIAGA, and
DANIEL ARAUJO as trustees of and
on behalf of the LAAD RETIREMENT PLAN,
and as trustees of and on behalf of the LAAD
CORPORATION S.A. MONEY PURCHASE
RETIREMENT PLAN, and on behalf of
all others similarly situated,

      Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, BENJAMIN FERNANDEZ, GUSTAVO MARTINEZ, OSCAR
LUZURIAGA, and DANIEL ARAUJO as trustees of and on behalf of the LAAD
RETIREMENT PLAN, and as trustees of and on behalf of the LAAD CORPORATION S.A.
MONEY PURCHASE RETIREMENT PLAN, file this class action complaint on behalf of the
LAAD RETIREMENT PLAN, the LAAD CORPORATION S.A. MONEY PURCHASE
RETIREMENT PLAN, and all others similarly situated against Defendant, MERRILL LYNCH,
PIERCE, FENNER & SMITH INCORPORATED, and allege as follows:

## Introduction

1.      This is an action for equitable relief and damages under the Employee Retirement Income Security Act ("ERISA"). Plaintiffs seek to recover, for the benefit of the LAAD RETIREMENT PLAN and the LAAD CORPORATION S.A. MONEY PURCHASE RETIREMENT PLAN ("LAAD Retirement Plans" or the "LAAD Plans") and all others similarly situated (collectively, the "Plans"), excess payments made by the LAAD Plans and the Plans, and fees, compensation and other profits derived from those payments received and wrongfully retained by Defendant, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED ("Merrill Lynch"), as a result of its breaches of fiduciary duties and self-dealing. This includes its failure to provide information to mutual fund companies that sold mutual fund shares to the Plans necessary to ensure that the Plans receive sales charge discounts that they were entitled to receive upon the purchase of these mutual fund shares.

2.      Merrill Lynch's conduct in failing to ensure that the Plans receive the sales charge discounts that they were entitled to receive is in breach of its fiduciary duties under ERISA. Merrill Lynch's conduct violates ERISA § 404, 29 U.S.C. § 1104(a), as the conduct is in breach of Merrill Lynch's fiduciary duties, including by failing to act with the care, skill, prudence, and diligence that a prudent person would use, and including its duty of loyalty to the Plans. Further, its retention of payments by mutual fund companies for its own benefit, resulting from the mutual fund companies' receipt of payments they would never have received if Merrill Lynch had ensured that the Plans to receive the discounts they were entitled to receive, constitute prohibited transactions which violate ERISA § 406, 29 U.S.C. § 1106(a)(1)(D).

3.      Plaintiffs bring this action, on behalf of the LAAD Retirement Plans and on behalf of all similarly situated Plans, to recover relief under ERISA §§ 409 and 502, 29 U.S.C.

§§ 1109 and 1132(a)(3) and (g), against Merrill Lynch. The relief Plaintiffs and the Plans are entitled to includes:

- A declaratory judgment holding that the acts of Merrill Lynch described herein are in violation of ERISA;

- Disgorgement or restitution to the LAAD Retirement Plans and all similarly situated Plans of all payments made by the Plans to any mutual fund companies as a result of Merrill Lynch's failure to ensure that the Plans received all discounts that the Plans were entitled to receive upon the purchase of mutual fund shares;

- Disgorgement or restitution of all profits made by Merrill Lynch as a result of any payments it received from any mutual fund companies derived from the additional and unauthorized payments that Merrill Lynch caused the Plans to make to such mutual fund companies;

- Attorneys' fees and costs; and

- Such other and further relief as the Court may deem appropriate.

## Parties

4.     Benjamin Fernandez ("Fernandez"), Gustavo Martinez ("Martinez"), Oscar Luzuriaga ("Luzuriaga"), and Daniel Araujo ("Araujo") are the trustees of the LAAD Retirement Plans. In that capacity, Fernandez, Martinez, Luzuriaga, and Araujo are fiduciaries of the LAAD Retirement Plans. The trustees and the LAAD Retirement Plans are located at Coral Gables, Florida.

5.     Defendant Merrill Lynch is a Delaware corporation with its principal office in New York, New York. Merrill Lynch is a fiduciary of the LAAD Retirement Plans within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A). Merrill Lynch touts itself as a

3

global investment banking and brokerage firm. Merrill Lynch is registered with the Securities and Exchange Commission ("SEC") as a broker-dealer and investment adviser and has been a member of the self-regulatory organization now known as the Financial Industry Regulatory Authority ("FINRA") since 1937. Merrill Lynch claims to have more than 15,000 financial advisors and over $2 trillion in customer assets.

## Jurisdiction and Venue

6.      Plaintiffs seek relief on behalf of the LAAD Retirement Plans and all other similarly situated plans (the "Plans") pursuant to ERISA's civil enforcement provisions with respect to fiduciaries and other interested parties and, specifically, under ERISA § 409, 29 U.S.C. § 1109.

7.      This Court has "federal question" jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under ERISA Section 502(e), 29 U.S.C. § 1132(e).

8.      Pursuant to ERISA Section 502(f), 29 U.S.C. § 1132(f), this Court's jurisdiction arises irrespective of the amount in controversy.

9.      Venue is proper in this district pursuant to ERISA Section 502(e), 29 U.S.C. § 1132(e)(2), because this is the district where the LAAD Retirement Plans are administered, in addition, at least some of Merrill Lynch's breaches of fiduciary duty took place in this district, and, further, Defendant Merrill Lynch maintains offices and may be found in this district.

## Facts Common to All Claims

10.     Merrill Lynch markets services to small business employers that set up 401k retirement plans, such as the LAAD Retirement Plans, in order to allow their employees to invest and save for retirement. Merrill Lynch requires that all such plans execute a written contract for

services. The Merrill Lynch form contract for its small business clients is referred to by Merrill

Lynch as the "RCMA Agreement."

11.     The LAAD Retirement Plans were originally established in 1977. From at least

1999 through 2013, Merrill Lynch provided investment and other services to the LAAD

Retirement Plans under a RCMA Agreement, including the purchase and sale of various mutual

fund shares.

12.     Among other things, the RCMA Agreement provides that several accounts may

be set up for individual employee investors. The latest version of the RCMA Agreement

provides in part that: "The RCMA Service is an integrated financial service that links together

four components," these include "a Securities Account," a checking account and other optional

services. RCMA Agreement at 1, § I (1). According to the agreement, "The Securities Account

may be used to purchase, sell and hold securities and other investments available from or through

Merrill Lynch. The Customer agrees to pay normal brokerage fees for securities transactions in

the Securities Account." *Id.*, § I (1)(a). Moreover: "All transactions in the Securities Account

***shall be subject to the constitution, rules, regulations, customs and usages of the exchange or***

***market and its clearinghouse, if any, on which such transactions are executed*** by Merrill

Lynch . . . as well as the policies of Merrill Lynch." *Id.*, at 7 § I (11)(f)(emphasis added). The

RCMA Agreement provides further that:

> The Securities Account is a conventional Merrill Lynch securities account that
> may be used to purchase, sell and hold securities on a fully paid, cash basis.
>
> The ***Securities Account will be maintained pursuant to the rules and regulations
> of the Securities and Exchange Commission***, the Board of Governors of the
> Federal Reserve System ***and the Financial Industry Regulatory Authority
> ("FINRA"),*** as well as the policies and procedures of Merrill Lynch. As is the
> case with a regular securities account, the Customer will pay brokerage fees for
> securities transactions in the Securities Account.

*Id.*, at 9 § II (4)(a)(emphasis added).

13.     The services provided under the RCMA Agreement are provided only to tax qualified retirement plans, such as the "401(k)" retirement plan set up for the LAAD Retirement Plans. *See id.* at 8 § II. As Merrill Lynch acknowledges, the retirement plans that enter into a RCMA Agreement with Merrill Lynch are subject to ERISA. *See id.* at 15, § II(A) [sic] ("We understand . . . that your organization sponsors or maintains  . . . a retirement plan (the "Plan") that is subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")").

14.     The RCMA Agreement also contains a discussion of fees charged specifically with respect to investments in mutual fund accounts, including what Merrill Lynch describes as: "INDIRECT COMPENSATION PAYABLE FROM OTHER SOURCES," "Mutual Fund Related Payments." In relevant part, this section provides:

> MLPF&S [Merrill Lynch] **has entered into agreements** with various fund families and/or their service providers **to be paid a negotiated amount with respect to sales and/or servicing these funds** and our customers, **including retirement plan customers**, **that invest in these funds**. The type, amount and source of payment of these fees varies depending upon the fund, the services being provided by MLPF&S and the share class in which Plan participants are invested . . . .

*Id.* at 18 (emphasis added).

15.     Mutual funds charge a variety of fees to investing clients. These fees go by various names or descriptions including: upfront sales charges (or "load") imposed on purchases (as a percentage of offering price); deferred sales charges (or "load") (as a percentage of original purchase price or redemption proceeds); management fees; distribution or service (12b-1) fees; exchange fees; acquired fund fees; and, other expenses.

16.     Mutual fund companies use different labels to refer to what they call fund "classes." The various classes of a particular mutual fund (typical mutual fund class names include: "Class A," "Class B," and "Class C") all invest in the same securities. The class labels

6

are used merely to differentiate between the type and level of fees imposed upon different investors in the same mutual fund.

17.     When mutual funds are purchased through brokers such as Merrill Lynch, some portion of the various mutual fund fees may be shared between the broker and the mutual fund company.

18.     During the Class period, employee investors who purchased mutual fund shares through the Plans did not purchase the shares directly from the mutual fund companies. Instead, Merrill Lynch aggregated all purchases from its clients nationwide and then dealt with mutual fund companies on what Merrill Lynch refers to as an "omnibus basis." Merrill Lynch also negotiated with mutual fund companies for fees which these companies would pay to Merrill Lynch on the same omnibus basis. In the RCMA Agreement, Merrill Lynch describes the arrangement as follows:

> Typically, fee rates for the mutual fund services . . . are negotiated and conducted by MLPF&S on an "omnibus basis" (that is, by *consolidating all of our clients' daily trades with a fund into one trade and by setting up one master account with the fund's transfer agent) and are payable at the annual rates of* either a "per position" charge (i.e., a per fund, per participant dollar amount) or *a specific percentage (basis points) of the value of the assets in relevant client accounts*. . . .

*See id.* at 18 (emphasis added).

19.     Significantly, most of the mutual fund companies that issued mutual fund shares that Merrill Lynch offered to small business retirement plans under the RCMA Agreement had agreed to waive their up-front sales charges for Class A mutual fund shares purchased by retirement plan investors.

20.     Retirement plans investors who qualified for a Class A sales charge waivers and purchased those shares would also pay lower annual expenses while they owned the shares than would be charged for "Class B," "Class C," or other classes of mutual fund shares, and would

not be subject to potential application of a contingent deferred sales charge ("CDSC"). Therefore, these investors would obtain significantly better investment results in their retirement accounts by purchasing Class A shares with sales charge waivers than by purchasing any other class of shares.

21.     Although the mutual fund companies agreed to waive their up-front sales charges for Class A shares purchased by retirement plan investors, because Merrill Lynch made purchases on an "omnibus basis," the mutual fund companies did not know when purchases made by Merrill Lynch were being made for the benefit of retirement plan investors unless Merrill Lynch specified that the purchases were being made for retirement plan investors eligible for the sales charge waiver.

22.     Merrill Lynch, however, failed to provide the information necessary for the mutual fund companies to apply the waivers. As a result, when the Plans purchased mutual fund shares for their beneficiaries who were otherwise eligible to purchase Class A shares with sales charge waivers, they did not receive those shares which would have been most beneficial to the Plans.

23.     Rather than providing the LAAD Retirement Plans and the Plans with the most beneficial shares, Merrill Lynch instead routinely sold either Class A shares with sales charges, or other classes of mutual fund shares that had either increased annual fees, potential CDSC charges or other increased fees beyond those which would have been imposed upon the Plans if Merrill Lynch had provided Class A shares with sales charge waivers.

24.     During the Class period, when Merrill Lynch sold mutual fund shares, including in those instances where it sold shares of a mutual fund share class other than the shares most beneficial to investors, Merrill Lynch received payments for its own benefit from the mutual

8

fund companies based in part on a portion of the sales charge or other fees that were paid by the investors.

25.     Merrill Lynch exercised discretionary authority and control with respect to the Plans' assets by, among other things, electing to transmit share purchase information to the mutual fund companies without providing the information necessary for the mutual fund companies to know that the purchases were being made by investors in employee retirement plans who were eligible for sales charge waivers.

26.     Merrill Lynch's conduct is in violation of the prohibited transaction rules of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106(b), as well as ERISA's fiduciary rules, including the duty of care and the rules against self-dealing.

27.     Merrill Lynch's improper conduct continued for many years, at least from January, 2006 through July, 2012. Further, the conduct was intentional or at a minimum in violation of Merrill Lynch's duty of care, as Merrill Lynch was well aware at the highest levels of Merrill Lynch management that it had not ensured that the Plans were receiving the mutual fund sales charge waivers that the Plans were entitled to receive.

28.     In 2011, Merrill Lynch supposedly informed FINRA, the self-regulatory organization of which Merrill Lynch is a leading and long-time member, of the wrongdoing set out above. Merrill Lynch later made some voluntary payments to some of the retirement plan customers who had been harmed by the wrongdoing, and thereafter was required by FINRA to make still other payments, to repay some of the fees improperly imposed upon the Plans as a result of Merrill Lynch's conduct. The fees repaid by Merrill Lynch were far less than the amount of the fees improperly charged to the LAAD Retirement Plans and the Plans.

29.     Until January, 2015, Merrill Lynch concealed from the LAAD Retirement Plans and the other Plans the fact that it had been effectively charging the excess sales charge and other fees and receiving the improper compensation set out above. This continuing violation of ERISA was deceptively concealed by Merrill Lynch.

### Class Action Allegations

30.     This action is brought by Plaintiffs on behalf of the LAAD Retirement Plans. Plaintiffs seek certification of a class of participants ("Class") as follows:

> All trustees of all employee pension benefit plans covered by ERISA who had a contractual relationship with Merrill Lynch pursuant to a RCMA Agreement and were eligible for waivers of Class A mutual fund load charges, and who either:
>
> (a) purchased Class B or Class C mutual fund shares through Merrill Lynch and held such shares in their accounts at any time on or after January 1, 2006; or,
>
> (b) purchased Class A mutual fund shares without a mutual fund load charge waiver through Merrill Lynch on or after January 1, 2006.

31.     Excluded from the Class are Defendant, any administrators of employee pension benefit plans for which Defendant's directors, officers or employees are beneficiaries and any employee pension benefit plans of which the Judge to whom this case is assigned or any other judicial officer having responsibility for this case is a beneficiary.

32.     This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, because it meets all the requirements of Rule 23(a)(1-4), including the numerosity, commonality, typicality, and adequacy requirements, and it satisfies the requirements of Rule 23(b)(2) or 23(b)(3). It satisfies the requirements of 23(b)(2), because the conduct of Merrill Lynch has affected the Class generally, thereby making final injunctive relief or declaratory relief appropriate with respect to the Class as a whole. It also satisfies the requirements of 23(b)(3), in that the predominance and superiority requirements are met.

33.     Numerosity - The members of the Class are so numerous that joinder of all members is impracticable. Although Plaintiffs do not know the exact number of Class members as of the date of filing, Plaintiffs believe that there are over twenty thousand Class members throughout the United States.

34.     Commonality. There are numerous questions of fact or law that are common to Plaintiffs and all the members of the Class. Common issues of fact and law predominate over any issues unique to individual Class members. Issues that are common to all Class Members include, but are not limited to the following:

(a) whether Merrill Lynch acted as fiduciary under ERISA in connection with the conduct described herein;

(b) whether Merrill Lynch breached fiduciary duties owed to the Class under ERISA by failing to provide the information necessary for mutual fund companies to give the Plans the Class A mutual fund share sales charge waiver discounts that the Plans were entitled to receive;

(c) whether Merrill Lynch failed to monitor the fees and expenses paid by the Plans and, as a result caused or allowed the Plans to pay fees and expenses that were unreasonable or were not incurred solely for the benefit of the Plans' participants;

(d) whether Merrill Lynch breached fiduciary duties owed to the Class under ERISA by failing to periodically review or monitor the mutual fund shares purchased by the Plans and failing to remove mutual fund shares purchased by the Plans that did not consist of Class A mutual fund shares with sales charge waiver discounts and to replace those shares with Class A mutual fund shares that did have sales charge waiver discounts;

(e) whether Merrill Lynch, violated ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), in arranging for, receiving and retaining payments from mutual fund companies derived from excessive fees charged to the Plans;

(f) whether Merrill Lynch acted solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries or defraying reasonable expenses of administering the Plans;

(g) whether Merrill Lynch violated ERISA § 404, 29 U.S.C. § 1104(a)(1)(B) by failing to discharge its duties with respect to the Plans solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(h) whether Merrill Lynch dealt with the assets of the Plans in its own interest or for its own account in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1);

(i) whether Merrill Lynch received improper consideration for its personal account from mutual fund companies dealing with the Plans in connection with the sale of mutual fund shares involving the assets of the Plans in violation of ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3);

(j) whether Merrill Lynch engaged in prohibited transactions by receiving payments from the mutual fund companies for its own benefit and otherwise profiting by effectively charging excessive fees for the administrative, management and investment services it provided to the Plans;

(k) whether Merrill Lynch failed to disclose to or inform the Plans of their right to receive Class A share sales charge waiver discounts as well as of the excessive fees and compensation that Merrill Lynch received; and,

(l) whether the Class is entitled to an injunction requiring Merrill Lynch to disgorge or pay restitution of all losses caused to the Plans and to disgorge  or provide restitution or restore to the Plans all profits earned by Merrill Lynch which it has made through the use of Plan assets pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109(a) and 1132(a)(2), and what form of relief should be afforded to Plaintiffs and the Class.

35.      Typicality - Plaintiffs have claims that are typical of the claims of all of the members of the Class. Merrill Lynch owed the same fiduciary duties and other obligations arising under ERISA to each of the Plans. Further, Plaintiffs' claims and all of the Class members' claims arise out of the same uniform course of conduct by Merrill Lynch and arise under legal theories that apply to the claims of Plaintiffs and all other members of the Class.

36.      Adequacy of Representation - Plaintiffs will fairly and adequately represent the interests of the members of the Class. Plaintiffs do not have claims that are unique to Plaintiffs, nor are there defenses unique to Plaintiffs that could undermine the efficient resolution of the Class' claims. Further, Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent it. There is no hostility between Plaintiffs and the unnamed Class Members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

37.      Predominance - Common questions of law and fact predominate over questions affecting only individual Class members. The only individual issues of significance likely to

arise will be the exact amount of damages recovered by each Class member, the calculation of which does not bar certification.

38.     Superiority - A class action is superior to all other feasible alternatives for the resolution of this matter. The vast majority, if not all, of the Class members were unaware of Defendant's breaches of fiduciary duty and prohibited transactions and have been led believe that Merrill Lynch has already refunded the amounts that Class Members paid and the profits that Merrill Lynch improperly received. As a result, the Class members are unlikely to bring suit individually. Furthermore, the claims of most Class members would be too small to economically justify individual litigation. Finally, individual litigation of multiple cases would be highly inefficient, and would waste the resources of the courts and of the parties.

39.     Manageability - This case is well suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

40.     Merrill Lynch has acted similarly with respect to the entire Class by uniformly subjecting the Plans to the improper scheme described above. Accordingly, injunctive relief, as well as legal or equitable disgorgement and restitution, along with declaratory relief, is appropriate with respect to the Class as a whole.

41.     Merrill Lynch is a fiduciary under ERISA § 3(21), 29 U.S.C. § 1002(21)(a), with respect to the excess sales charges, excess annual fees, CDSC and other charges improperly paid by the Plans in connection with the purchase of mutual fund shares because plan assets were used to make these payments. Further, Merrill Lynch exercised authority or control with respect to the management or disposition of these Plan assets by controlling which mutual fund share

classes were available investment options for the Plans and participants, by failing to provide the information necessary for mutual fund companies to provide Class A share sales charge waivers to the Plans.

42.     The payments received by Merrill Lynch derived from the excess sales charges, excess annual fees, CDSC and other charges themselves also constitute assets of the Plans in Merrill Lynch's hands. While functioning as an ERISA fiduciary, Merrill Lynch effectively used its custody and control of assets of the Plans to obtain payments from the mutual fund companies and caused the Plans to make excess payments to mutual fund companies who then paid a portion of those excess payments back to Merrill Lynch in the form of sales charges, commissions, and other fees and revenue. Further, the payments were made by the mutual fund companies and received by Merrill Lynch at the expense of the Plans and participants. As a fiduciary to the Plans, Merrill Lynch was and is prohibited from receiving benefits in connection with its control or exercise of authority over assets of the Plans not specifically agreed to by the Plans or their participants in their contracts with Merrill Lynch

43.     Merrill Lynch is, therefore, also a fiduciary under ERISA § 3(21), 29 U.S.C. § 1002(21)(a), with respect to the payments described above, because Merrill Lynch controlled or exercised authority respecting their management or disposition by arranging for, accepting and retaining them.

44.      ERISA provides in part that a fiduciary must discharge its duties with respect to a plan:

> solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> > (i)      providing benefits to participants and their beneficiaries; and

        (ii)     defraying reasonable expenses of administering the plan;

        (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

ERISA § 404(a), 29 U.S.C. § 1104(a)(1)(A) and (B). By improperly causing the Plans to make the excess sales charge and other fee payments described above, and by arranging for and retaining the commission payments and other compensation derived from the excess fees and sales charges paid by the Plans, Merrill Lynch violated its fiduciary duties as required by § 1104(a)(1)(A) and (B).

      45.     By arranging for and retaining the improper compensation and other payments set forth above, Merrill Lynch also engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b). That section provides in part that a fiduciary: "shall not  - (1) deal with the assets of the plan in his own interest or for his own account . . . or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(1), (3). Specifically, Merrill Lynch as a fiduciary dealt with the assets of the Plans in its own interest or for its own account. Further, Merrill Lynch received consideration from mutual fund companies for itself by causing the Plans to pay excess sales charges, annual fees, CDSC and other charges and fees to those mutual fund companies.

      46.     Additionally, by arranging or allowing for improper excess charges to be imposed upon the Plans and by retaining the sales charges, commissions and other compensation payments described above, Merrill Lynch engaged in prohibited transactions pursuant to ERISA § 406(b), 29 U.S.C. § 1106(b)(3), in that it constitutes a fiduciary receiving consideration for its

own account from mutual fund companies dealing with the Plans in connection with transactions involving the assets of the Plans.

## Count 1
### (Breach of Fiduciary Duty)

47.     Plaintiffs incorporate the allegations of paragraphs 1 through 46 as if fully set forth herein.

48.     Merrill Lynch was a fiduciary of the Plans under ERISA § 3(21), 29 U.S.C. § 1002(21)(a), and based on its discretion, authority or control with respect to the administration, management or disposition of assets of the Plans and because it had discretion and control, or exercised authority, with respect to the information necessary for the Plans to obtain the Class A share sales charge waiver discounts that the Plans were entitled to receive.

49.     Merrill Lynch was exclusively in control of communications with mutual fund companies with respect to the purchase of mutual fund shares by the Plans. In that capacity, it failed or refused to deliver, or prevented the delivery of, the information regarding the Plans and their employee retirement plan investments that was necessary in order for mutual fund companies to give the Plans the Class A share sales charge waiver discounts that the Plans were entitled to receive.

50.     In addition, Merrill Lynch is prohibited from receiving unwarranted benefits in connection with its position as a fiduciary of the Plans.

51.     The payments made by the mutual fund companies to Merrill Lynch also constitute plan assets because Merrill Lynch received the payments as a result of its fiduciary status or function. The mutual fund companies made payments to Merrill Lynch at the expense of the Plans and participants based upon the excessive fees and other sales charges imposed upon the Plans and the assets of the Plans as a result of Merrill Lynch's improper conduct. Moreover,

the payments that Merrill Lynch derived from these wrongful fees and sales charges also effectively constitute assets of the Plans that should have been used to make investments for the Plans and should never have been paid by the Plans to the mutual fund companies as fees and other charges.

52.     By causing or allowing the Plans to pay the improper excess charges described above, and by also arranging for and retaining fees, commissions or other compensation resulting from the improper charges imposed upon the Plans, Merrill Lynch violated its fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), in that it failed to discharge its duties with respect to the Plans solely in the interest of the Plans' participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plans with (b) the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

53.     Merrill Lynch also breached its fiduciary duties, by using its discretion and control over communication or delivery of the information necessary for the Plans to obtain the Class A share sales charge waiver discounts that the Plans were entitled to receive, in order to generate commission payments and other improper compensation for its own benefit. As to the fees and commission payments themselves, to the extent they constitute Plan assets, Merrill Lynch failed to use them for the exclusive purpose of providing benefits to the Plans' participants and their beneficiaries and defraying reasonable expenses of administering the Plans and also failed to act with the care, skill, prudence and diligence of a prudent person.

54.     Pursuant to ERISA § 408, 29 U.S.C. § 1109, and ERISA § 502, 29 U.S.C. § 1132(a), Merrill Lynch is liable for all losses and damages Plaintiffs and the Class have suffered as a direct result of Merrill Lynch's breaches of its fiduciary duties, including all payments that the Plans were improperly required to make for sales charges, excess annual fees, CDSC charges and other improper and unnecessary fees expended in connection with the Plans' purchases of mutual fund shares.

55.     In addition, Merrill Lynch is liable for and must disgorge and restore to the Plans all profits that Merrill Lynch made through use of Plan assets, including all fees, commission payments and other improper compensation derived from the sales charges and other fees that Merrill Lynch improperly required Plaintiffs and the Class to make to mutual fund companies.

56.     Merrill Lynch is also liable for interest on the losses and damages Plaintiffs and the Class have suffered and for damages and other equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs and other expenses of litigation.

### Count 2
### (Breach of Fiduciary and Violation of ERISA Prohibited Transaction Rules)

57.     Plaintiffs incorporate the allegations of paragraphs 1 through 46 as if fully set forth herein.

58.     Merrill Lynch has engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b)(1) and (3), by dealing with the assets of the Plans in its own interest or for its own account.

59.     Merrill Lynch's receipt and retention of the fee payments, commissions and other compensation, as set forth above, constituted prohibited transactions under ERISA § 406(b), 29 U.S.C. § 1106(b)(3), in that the receipt of these payments by Merrill Lynch amounts to and

constitutes a fiduciary receiving consideration for its own personal account from mutual fund companies that are dealing with the Plans in connection with the purchase and sale of mutual fund shares. Thus, Merrill Lynch earned improper and excessive compensation through acts of self-dealing and by acting solely for its own benefit, as opposed to for the benefit of the Plans.

60.     Pursuant to ERISA §§ 409(a) and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a)(2), Merrill Lynch is liable to the Plans to disgorge or make restitution of all fees, commission payments and other improper compensation received by it. In addition, Merrill Lynch is liable to the Plans and the Class to pay damages or make restitution to the Plans in an amount representing the difference between the value of the mutual fund shares purchased by the Plans including all sales charges, CDSC and other fees improperly tacked on as a result of Merrill Lynch's conduct and the value of Class A mutual fund shares with sales charge waivers.

61.     Plaintiffs and the Class also are entitled to pre-judgment interest and to all equitable or remedial relief as the Court may deem just and proper.

62.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a)(3), the Class seeks an order declaring that the above-described practices of Merrill Lynch and its earning of excessive compensation through self-dealing violate ERISA, and seeks a permanent injunction preventing Merrill Lynch from engaging in such conduct in the future.

WHEREFORE, Plaintiffs, Benjamin Fernandez, Gustavo Martinez, Oscar Luzuriaga, and Daniel Araujo as trustees of and on behalf of the LAAD Retirement Plan and as trustees of and on behalf of the LAAD Corporation S.A. Money Purchase Retirement Plan, and on behalf of the Class, respectfully demand judgment against Defendant, Merrill Lynch, Pierce, Fenner & Smith Incorporated, for:

    (a)     Declaratory and injunctive relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

(b)    Disgorgement, restitution or damages as set forth above, plus all other equitable or remedial relief as the Court may deem appropriate pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2);

(c)    Pre judgment and post judgment interest;

(d)    Attorneys' fees and costs; and,

(e)    Such other and further relief as the Court deems just and proper.


Dated:    July 27, 2015                            Respectfully submitted,

RODRIGUEZ TRAMONT & NUÑEZ P.A.          LEVINE KELLOGG LEHMAN
                                        SCHNEIDER + GROSSMAN LLP


By: /s/ *Frank R. Rodriguez*                By: /s/ *Lawrence A. Kellogg*
    Frank R. Rodriguez                          Lawrence A. Kellogg, P.A.
    Florida Bar No. 348988                      Florida Bar No. 328601
    Primary email: frr@rtgn-law.com             Primary email: lak@lklsg.com
    Paulino A. Núñez Jr.                         Jason Kellogg
    Florida Bar No. 814806                      Florida Bar No. 0578401
    Primary email: pan@rtgn-law.com             Primary email: jk@lklsg.com
    255 Alhambra Circle                         201 South Biscayne Boulevard
    Suite 1150                                  Miami Center, 22nd Floor
    Coral Gables, FL 33134                      Miami, FL 33131
    Telephone: (305) 350-2300                   Telephone: (305) 403-8788
    Facsimile: (305) 350-2525                   Facsimile: (305) 403-8789


### Notice Pursuant to ERISA § 502(h)

Pursuant to  ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned affirms that, on the

date set forth above, a true and correct copy of this Complaint was served upon the Secretary of

Labor and the Secretary of the Treasury by certified mail.

                                        By: /s/ *Paulino A. Núñez Jr.*
                                            Paulino A. Núñez Jr.