UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-cv-22782-Cooke/Torres

BENJAMIN FERNANDEZ, GUSTAVO
MARTINEZ, OSCAR LUZURIAGA, and
DANIEL ARAUJO as trustees of and on
behalf of the LAAD RETIREMENT PLAN,
and as trustees of and on behalf of the LAAD
CORPORATION S.A. MONEY
PURCHASE RETIREMENT PLAN, and on
behalf of all others similarly situated,

               Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INCORPORATED,

               Defendant.

---

**PLAINTIFFS' UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT, (II) CERTIFICATION OF THE CLASS
FOR SETTLEMENT PURPOSES, (III) APPROVAL OF NOTICE
TO THE CLASS AND (IV) SCHEDULING OF A FAIRNESS HEARING,
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Benjamin Fernandez, Gustavo Martinez and Oscar Luzuriaga, as trustees

of and on behalf of the LAAD Retirement Plan and the LAAD Corporation S.A. Money

Purchase Retirement Plan (collectively, the "LAAD Plans"), and on behalf of all others

similarly situated ("Plaintiffs"), move without opposition for: (i) preliminary approval of the

Settlement[1] of this Action against Defendant, Merrill Lynch, Pierce, Fenner & Smith Inc.

("Defendant" or "Merrill"); (ii) certification of the Settlement Class; (iii) approval of the

form and manner of the Settlement Notice; and (iv) the scheduling of a Fairness Hearing on

---

[1]     All capitalized terms shall have the meanings set forth in the Settlement Agreement,
which is attached as **Exhibit 1**.

final approval of the Settlement and Class Counsel's forthcoming motion for an award of a Case Contribution Fee for Plaintiffs and Attorneys' Fees and Expenses for Class Counsel.

## I.   INTRODUCTION

About a year before Plaintiffs filed this lawsuit, Merrill entered into a Letter of Acceptance, Waiver and Consent (the "2014 AWC") with the Financial Industry Regulatory Authority ("FINRA"), in which Merrill acknowledged its failure to provide appropriate sales charge waivers for mutual fund purchases by RCMA 05 small business retirement accounts like the ones held by the LAAD Plans and the Settlement Class Members.   Merrill made two sets of remediation payments, one voluntary and another pursuant to the AWC (collectively, the "Remediation"), to the Accounts that comprise the Settlement Class.  The Remediation totaled about $79 million.[2]

Plaintiffs, believing the Remediation to be insufficient, and after unsuccessfully attempting to determine the method by which their remediation was calculated, filed this lawsuit alleging breaches of fiduciary duty under Section 404(a)[3] of the Employee Retirement Income Security Act ("ERISA").   In addition to a complete remediation, Plaintiffs sought under ERISA Section 409(a)[4] the disgorgement of profits derived by Merrill as a result of the sales.

After nearly two years of litigation, Plaintiffs and Class Counsel have reached an agreement to settle this class action with Merrill for $25 million.  The proposed Settlement Agreement (**Exhibit 1**) provides an excellent recovery for the Settlement Class Members. *The Settlement not only makes the Settlement Class Members whole by paying them 100% of their losses, it includes accounts that were incorrectly excluded from the Remediation and gives the Settlement Class Members additional millions in disgorged profits — even after attorney's fees,*

---

[2]     Merrill Lynch also paid a regulatory fine of $8 million.

[3]     29 U.S.C. § 1404(a).

[4]     29 U.S.C. § 1109(a).

CASE NO. 15-cv-22782-Cooke/Torres

*expenses, taxes and Plaintiffs' Case Contribution Fee are deducted.*

Specifically, the Settlement features a Corrective Remediation Payment totaling at least $8.8 million,[5] equal to the deficient remediation payments and interest sought by Plaintiffs from the outset. The Settlement also features a Disgorgement Payment that represents a disgorgement and restoration to the Settlement Class Members of a significant portion of Merrill's profits within the meaning of Section 409(a). The Disgorgement Payment constitutes the remainder of the $25 million Settlement Payment, or up to about $16.2 million before payment of Attorneys' Fees, Expenses and Plaintiffs' Case Contribution Fee.

The Settlement is the result of extraordinary efforts made by Plaintiffs and Class Counsel. Of all of the trustees representing the thousands upon thousands of small business retirement plans holding the RCMA 05 Accounts that comprise the Settlement Class, Plaintiffs were the only trustees who questioned and complained about Merrill's original Remediation payments[6] and then pursued claims challenging the Remediation and seeking disgorgement of profits. Class Counsel scored 6½ years of Merrill's RCMA 05 documentation and the LAAD Plans' account statements to confirm the existence of a shortfall. Through a discovery effort that included six motions to compel, 11 depositions taken or defended and a review of more than 125,000 pages of documents and dozens of complex spreadsheets, Class Counsel, in consultation with a data scientist they retained, confirmed that the shortfall amounted to millions of dollars in unremediated sales charges and unpaid interest, and affected many of the Settlement Class Members' Accounts in some way. Although strenuously disputed by Merrill, Class Counsel also confirmed through their intensive discovery effort that Merrill's failure to provide sales charge waivers resulted,

---

[5]     The amount of corrective remediation before including additional unpaid interest at the IRS rate through the actual payment date is $7,786,936. Merrill estimates that the additional interest will be at least $1 million once calculated at the time of payment.

[6]     Dewolf Depo. Tr. at 40-41.

directly or indirectly, in millions of dollars in profits to Merrill. Plaintiffs asserted that none of those profits had been disgorged in the original remediation payments.

Pursuit of this lawsuit by Plaintiffs and Class Counsel carried significant risks. Merrill challenged Plaintiffs' standing on the ground that the LAAD Plans did not invest in each of the 106 mutual funds sold by Merrill to class members. Merrill contended that Plaintiffs could represent only those plans that invested in the same 14 mutual funds purchased by the LAAD Plans. If Merrill's standing argument had prevailed, it would have greatly curtailed the scope of this action and the number of Accounts receiving relief.

Merrill also challenged class certification on ascertainability and manageability grounds. Many of the 106 relevant mutual funds had sales charge waiver "eligibility requirements." For instance, some required the plans to have minimum assets under management and/or a threshold number of plan participants. Merrill argued that the information needed to determine eligibility could only come from the plans on an individualized basis, making eligibility determinations extremely unmanageable and the precise ascertainment of class members nearly impossible. This argument potentially could have defeated Class treatment and compelled each Settlement Class Member to bring an individual lawsuit to challenge their Remediation payment (assuming they were even aware of the issue). Remarkably, the Settlement reached by the Parties favorably resolves this issue by including *all* of the relevant RCMA 05 accounts and purchases of *all* 106 mutual funds, without requiring an analysis of each account's eligibility.

Additionally, Merrill denied having a fiduciary duty to the RMCA 05 accounts, under ERISA or otherwise. It also raised the ERISA statute of limitations as an affirmative defense, arguing that many of the sales took place outside the limitations period. Either defense, if successful, would have eliminated or severely limited potential recovery for the Class. Yet the Settlement Agreement covers RCMA 05 accounts all the way back to 2006.

Merrill also challenged the categorization of "profits" sought by Plaintiffs.

Specifically, Merrill contended that the $19.5 million in marketing fees it collected from mutual funds sold to Settlement Class Members during the Relevant Period did not constitute revenues attributable to the breach of fiduciary duty set forth in the Complaint. Merrill also contended that $14.5 million in distribution expense fees (12b-1 fees) paid to Merrill by the mutual funds had essentially already been paid back to the clients or paid to mutual funds on behalf of clients as part of the Remediation, and therefore should not be subject to disgorgement. If successful, Merrill's arguments would have significantly reduced Plaintiffs' and Settlement Class Members' disgorgement recovery, limiting them to about $3.5 million in profits relating to subaccounting fees earned by Merrill. Merrill even challenged that disgorgement, contending that its profit from those fees amounted only less than $700,000. The proposed Settlement resolves these challenges, and results in disgorgement of up to $16.2 million in Merrill profits.

Given these efforts and the results obtained, Plaintiffs ask the Court to grant preliminary approval of the Settlement Agreement and enter the proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), attached hereto as **Exhibit 1.B,** which will:

i.    preliminarily approve the Settlement on the terms set forth in the Settlement Agreement;

ii.   certify the Settlement Class, for purposes of the Settlement only, under Rules 23(a) and (b)(1) of the Federal Rule of Civil Procedure;

iii.  approve the form and content of the Settlement Notice attached as **Exhibit 1.A.**, and find that the procedures established for distribution of the Settlement Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process and Fed. R. Civ. P. 23; and

iv.   set a time, date and location for the Fairness Hearing.

## II.    BACKGROUND

In 2015, Plaintiffs approached Class Counsel about potential issues with the Remediation paid by Merrill.  On June 5, 2015, Class Counsel sent a letter to Merrill demanding a full accounting of the mutual fund sales charges paid by the LAAD Plans. Unsatisfied with Merrill's responses, Class Counsel filed the Complaint on behalf of Plaintiffs and a putative Class on July 27, 2015.

Alleging that Merrill was a "fiduciary" of the LAAD Plans under ERISA Section 3(21),[7] Plaintiffs brought two breach of fiduciary duty claims.  The first alleged that Merrill violated its fiduciary duties under Section 404(a)(1)(A) and (B)[8] by failing to discharge its duties solely in the interest of the LAAD Plans' participants and beneficiaries. The second claim alleged that Merrill violated Section 404(b)(1) and (3)[9] by dealing with the LAAD Plans' assets in its own interest or for its own account.  Each count sought damages and disgorgement of profits under Section 409(a),[10] through ERISA's civil enforcement mechanism found at Section 502(a)(2).[11]

Merrill moved to dismiss on the grounds that it was not an ERISA "fiduciary" and that Plaintiffs' claims were securities rather than ERISA claims.  The Parties fully briefed the issues.  At a hearing before the Court on July 27, 2016, the Court denied Merrill's motion.

Before the filing of the lawsuit, at a hearing before the Court and in its Answer, Merrill maintained that it had fully made all Remediation payments due to Plaintiffs. Merrill later filed a sworn declaration contending that it had uncovered a unique error that

---

[7]     29 U.S.C. § 1002(21)(a).

[8]     29 U.S.C. § 1104(a)(1)(A) and (B).

[9]     29 U.S.C. § 1106(b)(1) and (3).

[10]     29 U.S.C. § 1109(a).

[11]     29 U.S.C. § 1132(a)(2).

applied only to the calculation of a portion of the LAAD Plans' Remediation payments. Plaintiffs then commenced extensive discovery efforts in a compressed time frame. Plaintiffs served nine discovery requests, filed six motions to compel and obtained more than 125,000 pages of documents from Merrill. Plaintiffs received thousands more documents by subpoenaing FINRA and some of the 106 mutual funds sold by Merrill that offered sales charge waivers. Plaintiffs took five depositions of Merrill's employees and defended six depositions of Plaintiffs and their experts. The Parties prepared and submitted extensive expert reports on the issues of fiduciary duty and class ascertainability and manageability. Class Counsel and Plaintiffs' data science expert Alan Spies spent hundreds of hours analyzing account statements and other documents, including raw data, and dozens of complex spreadsheets produced by Merrill. Together, they also analyzed and tested how the Remediation was designed and implemented by Merrill, and determined that the Remediation was incorrect in several respects, both in amounts paid and in determining who was entitled to remediation.

The Parties fully briefed Plaintiffs' Motion for Class Certification. Plaintiffs also successfully opposed motions by Merrill to stay the case or extend deadlines. On February 6, 2017, the Parties conducted a day-long evidentiary hearing on class issues before Magistrate Judge Torres. The Parties also began drafting Motions for Summary Judgment and class-related Proposed Findings of Fact and Conclusions of Law.

The Parties conducted two mediation sessions in Atlanta. The first, on March 3, 2017, was attended by Plaintiffs Benjamin Fernandez and Oscar Luzuriaga. The second, on March 14, was attended by Plaintiff Gustavo Martinez. The mediation sessions were held by nationally renowned class action mediator Hunter Hughes III. Although those sessions did not immediately result in settlement, the Parties continued to engage in settlement talks through the mediator via telephone and email. Those talks ultimately resulted in a

settlement term sheet on May 12, 2017.  A formal Settlement Agreement was executed on June 8, 2017.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

The Parties have agreed to the following settlement terms.

### A.    The Settlement Class

The Settlement Class Members include those Accounts that received payment(s) in the original Remediation, and those that should have but did not.  The Settlement Class is defined as the trustees and named fiduciaries of each Plan, as that term is defined in ERISA § 3(3):

1. that, at any time between January 1, 2006 and July 13, 2012, held any interest in one or more RCMA 05 Accounts, whether
   a. in the name of the Plan, or
   b. in the name of a trustee or named fiduciary on behalf of the plan, or
   c. for the benefit of a Participant in the Plan; and
2. that either
   a. received, or was issued, whether for the benefit of the Plan or a Participant in the Plan, a Remediation Payment in any amount, or
   b. held an interest in an Omitted Remediation Account.

### B.    Monetary Relief

Merrill will deposit $25,000,000 (the "Settlement Amount") in an interest-bearing Escrow Account maintained by a third-party Settlement Administrator, Garden City Group, within 14 business days of this Court's entry of a Final Order and Judgment.  The Settlement Amount will be used to pay any approved Case Contribution Fee, approved Attorneys' Fees and Reimbursable Expenses, and Taxes and Tax-Related Costs.  The remaining Distributable Settlement Amount shall be disbursed to the Settlement Class Members by check (for Class members who are no longer RCMA 05 Accountholders) or by Account credit (for those who are).  A Settlement Class Member's Distributable Settlement Amount will consist of any Corrective Remediation Payment that may be required to make

them whole for the sales charges and unpaid interest. In addition, each Settlement Class Member will receive a pro-rata Disgorgement Payment based upon account values at various points in time.

### C.   Release

In exchange for the Settlement Amount, Plaintiffs and the Settlement Class Members will provide Defendants' Released Parties with a limited release of any Claim that was pleaded in the Complaint or that could have been pleaded based on the same factual predicate.

### D.   Notice to the Settlement Class and Right to Object

Merrill will separately pay all costs of administration of the Settlement. This includes the costs of sending a Settlement Notice in the form attached as **Exhibit 1.A**. The Settlement Notice will be sent to the Settlement Class Members by first-class mail or email (when available) within 30 days of the entry of a Preliminary Approval Order. Within that time, the Settlement Administrator shall also establish a Settlement Website containing the Settlement Notice and the Settlement Agreement, and a toll-free Settlement Information Line to which Settlement Class Members can direct questions about the Settlement.

Each Settlement Class Member shall have a right to object to the Settlement within 40 days of the mailing of the Settlement Notice. The requirements for filing and pursuing an objection will be described for Settlement Class Members in the Preliminary Approval Order.

### E.   Class Representatives' Compensation

Plaintiffs will request an incentive payment or "Case Contribution Fee" of $150,000, collectively, to the Class Representatives for their pursuit of the class claims in this case. Plaintiffs will seek this fee not individually but rather as trustees of the LAAD Plans, to be distributed among the LAAD Plans' participants. Any Case Contribution Fee will be paid from the Settlement Payment prior to distribution of monies to the Settlement Class.

The results in this case warrant a significant Case Contribution Fee. Plaintiffs actively participated in the formulation and prosecution of this class action. Plaintiffs were the only trustees of a RCMA 05 small business retirement plan to bring a claim — or even complain about — the issues that have resulted in the Settlement. When Plaintiffs received Merrill's original remediation payments and credits, Plaintiffs questioned the nature of those payments and their amounts. Plaintiffs brought the issue to the attention of Class Counsel. Plaintiffs monitored and actively participated in the lawsuit, and all three were deposed.[12] Each traveled to Atlanta to attend at least one of the two mediation sessions, and each had helpful input into the settlement negotiation strategy.

**F.    Attorneys' Fees and Expenses**

Class Counsel will request Attorneys' Fees equal to 35% of the Settlement Payment, or $8,750,000. Class Counsel also will seek reimbursement for expenses and costs incurred of no more than $300,000. Merrill will not oppose any request up to those amounts.

As will be explained and supported in more detail in a forthcoming petition for Attorney's Fees and Expenses, Class Counsel respectfully submit that they did an extraordinary job in this case, warranting the significant, 35% fee recovery. Despite the fact that the claims raised in this case affected a nationwide group of 38,909 small business retirement accounts, Class Counsel were the only lawyers in the country to bring a lawsuit. Class Counsel aggressively prosecuted the lawsuit and were able to confirm, after numerous motions to compel, depositions and laborious document review and analysis, that Merrill's Remediation was insufficient and excluded accounts that should have been included. Through this Settlement, Class Counsel has made the Settlement Class Members whole and obtained additional millions in disgorged profits for them.

---

[12]    A fourth trustee, Daniel Araujo, resigned as trustee of the LAAD Plan while this lawsuit was pending, but also sat for a deposition after his resignation.

Class Counsel took on considerable financial risk to obtain these results. The two Class Counsel firms, Levine Kellogg Lehman Schneider + Grossman LLP and Rodriguez Tramont & Nùñez P.A., devoted thousands of hours of time and fronted hundreds of thousands of dollars in costs on a contingency fee basis, with no guarantee of any recovery or reimbursement of expenses. Class Counsel's firms have just over 20 lawyers combined, which increased the financial risk to the Firms from the use of significant Firm resources. They faced formidable and sophisticated opposition from a 1,900-plus lawyer firm, Morgan Lewis & Bockius, whose ERISA litigation department alone is comprised of more than 30 lawyers.

Class Counsel will not seek fees or costs if enforcement of the Settlement Agreement is necessary (beyond those the Court may award in its discretion). Class Counsel will submit a detailed Fee and Expense Application at least 30 days prior to the Fairness Hearing, or within any other timeframe set by the Court.

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

"There exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (Altonaga, J.) (citations omitted). "Thus, in reviewing a proposed settlement, as here, the Court must take into account 'the clear policy in favor of encouraging settlements, . . . particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'" *Id*, (quoting *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir.1975)).

Within this context, a district court's approval of a class action settlement proceeds in two steps. *See, e.g., Wilson v. Everbank, N.A.*, No. 14-cv-22264, 2015 WL 10857344, at *1 (S.D. Fla. Aug. 31, 2015). The first step is to determine whether to conditionally certify a settlement class and notify class members of the pending settlement and a right to

participate in a final fairness hearing. *See id.*; *see also* MANUAL FOR COMPLEX LITIG. (FOURTH) §§ 21.622-.23. The second step involves the fairness hearing itself, which occurs only after class members have been notified of their right to participate in the hearing and object to the settlement. *See Wilson*, 2015 WL 10857344, at *1; *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744, 2015 WL 12533121, at *10 (S.D. Fla. Aug. 4, 2015).

During this first step — the preliminary approval stage — the Court's task is to evaluate whether the Settlement falls within the "range of reasonableness." *In re Checking Accout Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (King, J.) (quoting 4 NEWBERG ON CLASS ACTIONS § 11.26). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id.* (quoting *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D.Fla. Jun. 15, 2010) (Cohn, J.). "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *Id.* at 661-62 (quoting MANUAL FOR COMPLEX LITIG. (THIRD) § 30.42.

Here, the Settlement Agreement was negotiated at arm's length by counsel well-informed of the issues and evidence, and highly experienced in complex class action and financial services industry litigation. This lawsuit was actively litigated for nearly two years. Settlement was achieved with the significant assistance of an experienced mediator, Hunter Hughes III, who is renowned for his mediation of (among other cases) the *Walmart v. Dukes* class action. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

In reaching the Settlement, Plaintiffs and Class Counsel seriously considered: (i) the benefits to the Settlement Class Members of the terms agreed to in the Settlement; (ii) the facts divulged during discovery in the litigation and the applicable law; (iii) the attendant

risks of continued litigation and the uncertainty of the outcome of the Action, including but not limited to class certification and statute of limitations; (iv) the desirability of permitting the Settlement to be consummated according to its terms; and (v) that it is in the best interest of Plaintiffs and the Settlement Class Members to settle the Action as set forth below.  Moreover, the Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of Settlement.

Plaintiffs and Class Counsel also considered the fact that Merrill has denied and continues to deny that it had or breached fiduciary duties to Plaintiffs or the Settlement Class Members, or that this case is susceptible to class treatment.  And Merrill has shown the willingness and ability to defend the lawsuit through trial and possibly appeal.  Yet like Plaintiffs, Merrill has concluded that it is desirable to settle the claims to avoid the costs, disruption and distraction of further litigation.

In sum, the proposed settlement balances the risks, costs and uncertainties of continued litigation with the certainty of benefits that provide substantial meaningful recovery that makes the Settlement Class whole while also providing a distribution of millions of dollars of disgorged profits.  The payments that would be provided under the Settlement Agreement are adequate and very close to, or even more than, what might have been possible to obtain through extended litigation and trial, particularly when considering the expenses and delays of continuing litigation.

## V.    CLASS CERTIFICATION FOR SETTLEMENT IS APPROPRIATE

In granting preliminary approval, the Court should also certify the Class for settlement purposes.  "A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007).  To certify a class for settlement purposes under Fed. R. Civ. P. 23(e), the Settlement Class must satisfy the requirements of Rules 23(a) and 23(b).  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

622 (1997); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). However, when considering whether the elements of Rule 23 are met, the Court's approach is often more relaxed than when a defendant contests certification. In *Amchem*, the U.S. Supreme Court recognized that "[s]ettlement is relevant to class certification. . . . Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 619-20.

Here, the requirements of Rule 23(a) and (b)(1) are met under the Settlement Agreement.

### A.     The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the Class be so numerous that individual joinder of all plaintiffs is impracticable.[13] Here, there are tens of thousands of Settlement Class Members, easily satisfying the numerosity requirement.

### B.     Questions of Law and Fact Are Common to the Class

The second prerequisite to class status involves a showing that there are questions of fact or law common to the class. *See* Fed. R. Civ. P. 23(a)(2). Commonality "is generally satisfied [where] defendants have engaged in a standardized course of conduct that affects all class members." *Sanchez-Knutson*, 310 F.R.D. at 536. The rule simply "requires a common question capable of common resolution." *Id.* (citing *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013)). "Plaintiffs face a 'low hurdle' in bearing this 'light' burden, as commonality 'does not require that all questions of law and fact raised be common.'" *Id.* (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009)). Just "one issue affecting all or a significant number of proposed class

---

[13]     There is no rigid standard for determining numerosity. The Eleventh Circuit has held that 'generally, less than twenty-one is inadequate, more than forty adequate.'" *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 536 (S.D. Fla. 2015) (Dimitrouleas, J.) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

members is sufficient" to establish commonality.  *County of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 667 (S.D. Fla. 2010) (Moore, J.) (internal quotations omitted) (citing *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (Nesbitt, J.)).

In this case, common issues of fact and law abound.  Common questions of law include whether Merrill had a fiduciary duty to Plaintiffs and the class under ERISA, and whether Merrill breached that fiduciary duty.  Factually, common issues exist such as whether Merrill profited from its actions.  Common questions relating to the amount of damages suffered by class members are also implicated:

    (i)      whether Merrill Lynch repaid to the LAAD Plans the full amount of the excess sales charges imposed upon the LAAD Plans, together with appropriate interest; and

    (ii)     the amount of profits Merrill Lynch received in the form of compensation and other payments derived from the excess sales charges that Merrill Lynch caused Plaintiffs and the class to pay.

Each of these common questions is alone sufficient to meet the commonality requirement, and each is capable of common resolution.

### C.    Plaintiffs' Claims Are Typical of Settlement Class Members' Claims

The claims of the putative class representatives are typical of the claims of the broader class under Rule 23(a)(3).  "Like commonality, typicality is not a demanding test." *Priceline.com, Inc.*, 265 F.R.D. at 668. "Typicality serves one simple purpose: to assure that the named representatives' interests are aligned with those of the class." *Singer*, 185 F.R.D. at 689.  As such, the typicality requirement "primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." *Id.*

Here, Plaintiffs and the Settlement Class Members all were victims of the same alleged breaches of the same fiduciary duty.  Plaintiffs and the Settlement Class Members' claims arise broadly out of a failure to apply sales charge waivers to certain eligible retirement plans that purchased shares of mutual funds.  As evidenced by the fact that

Merrill included the LAAD Plans in the original Remediation payments, the LAAD Plans were among the eligible retirement plans, like the Settlement Class Members, that did not receive sales charge waivers. Thus, Plaintiffs' claims are typical of the larger class.

### D.   Plaintiffs and Class Counsel Are Adequate Representatives

The final prerequisite of Rule 23(a) requires a showing that the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Generally, the adequacy of the representation depends on two requirements: "the class representative must adequately prosecute the action; and there must not be any substantial conflict of interest existing between the representatives and the class." *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1309 (S.D. Fla. 2015) (citing *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

Here, as described above Plaintiffs actively sought out counsel, monitored the lawsuit, sat for depositions and participated in mediation. Furthermore, Plaintiffs (like all Settlement Class Members) are themselves retirement plan trustees who owe fiduciary obligations to their retirement plan beneficiaries. Plaintiffs' interests are coincident with, and do not conflict with, the Settlement Class Members' interests. Plaintiffs pursued this litigation vigorously in an effort to obtain the maximum recovery, both for themselves (and their own Plan beneficiaries) and for the other class members, and they have successfully done so.

As to the adequacy of Plaintiffs' counsel, "absent specific proof to the contrary, the adequacy of class counsel is presumed." *Diakos*, 137 F. Supp. 3d at 1309. In the class certification stage, Merrill did not challenge the adequacy of Class Counsel's representation. Class Counsel are experienced in complex class action litigation as well as FINRA issues, and have successfully prosecuted numerous cases in courts throughout the country and in this District. A description of Class Counsel and their experiences is listed on **Exhibit 2**.

For the reasons stated above, Plaintiffs and Class Counsel have met the adequate representative requirement of Rule 23(a)(4).

### E.     Plaintiffs Meet the Requirements of Rule 23(b)(1)

Plaintiffs' claims should be certified under Rule 23(b)(1), which provides for certification where:

> the prosecution of separate actions by . . . individual members of the class would create a risk of (A) inconsistent or varying adjudications . . . which would establish incompatible standards for the party opposing the class, or (B) adjudications with respect to the individual members of the class which would be dispositive of the interest of the other members not parties to the adjudications.

Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *In re IKON Office Solutions*, 191 F.R.D. 457, 466 (E.D. Pa. 2000).  In both cases, the court is concerned with the problems that would be caused if each potential class member were to pursue his or her own lawsuit.

Here, Plaintiffs have sought, and the Settlement Agreement provides for, the complete recovery of losses to the plans and a substantial disgorgement of profits as provided under Section 409(a).  The civil enforcement mechanism through which Plaintiffs travel, Section 502(a)(2), provides the avenue for pursuing that recovery and disgorgement. Within this context, and "[i]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009); *Kolar v. Rite Aid Corp.*, No. 01-1229, 2003 WL 1257272, at *3 (E.D. Pa. March 11, 2003) ("Because of ERISA's distinctive 'representative capacity' and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class.").

Moreover, the Rule 23 Advisory Committee has noted that "an action which charges a breach of trust [by a] fiduciary similarly affecting the members of a large class of . . .

beneficiaries" calls for certification under Rule 23(b)(1). *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999) (citing same). Indeed, cases filed by 401(k) plan participants for breach of fiduciary duty are routinely certified under Rule 23(b)(1). *E.g., DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006) (breach of fiduciary duty alleged by 401(k) plan participants; Rule 23(b)(1) class certified); *Banyai v. Mazur*, 205 F.R.D. 160, 165 (S.D.N.Y. 2002) (same); *In re IKON Office Solutions*, 191 F.R.D. at 466 (same); *In re Polaroid ERISA Litig.*, 2006 WL 2792202, at *11 (S.D.N.Y. Sept. 29, 2006) (same); *In re WorldCom Inc. ERISA Litig.*, 2004 WL 2211664, at *3 (same).

Here, the risk of establishing inconsistent standards under ERISA is particularly strong because the central element of the Plaintiffs' claims is not individualized: whether Merrill had a fiduciary duty to obtain the sales charge waivers for its RCMA 05 customers, and breached that duty by failing to do so. If Merrill has fiduciary duties in this factual context, they are common to all Settlement Class Members. If class members were required to bring separate, individual actions against Merrill regarding Merrill's identical actions, there very well could be inconsistent or varying adjudications that would establish incompatible standards of conduct for Merrill.

If certification is not granted, and the class members pursue their claims individually in multiple jurisdictions, the parties could face numerous inconsistent rulings, binding Merrill to those conflicting rulings. *See Rogers v. Baxter Int'l, Inc.*, 2006 WL 794734, at *10 (N.D. Ill. March 22, 2006). Since ERISA fiduciaries are under a duty of impartiality requiring them to treat similarly situated beneficiaries alike, "[w]hether defendant breached its fiduciary duty is a question common to all potential cases and could, if tried in separate actions, result in wholly inconsistent adjudications." *Westman v. Textron, Inc.*, 151 F.R.D. 229, 231 (D. Conn. 1993); *see also Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984); *Struble v. N.J. Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 333 (3d Cir. 1984); RESTATEMENT (SECOND) OF TRUSTS § 232 (1959).

For these reasons, the Court should certify the Class under Rule 23(b)(1).

## VI.   THE PROPOSED NOTICE PLAN IS ADEQUATE

Class notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). "Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 172 (1974). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Id.* at 175.

Here, the form and method of notice of settlement jointly proposed by the Parties satisfy all due process considerations and meet the requirements of Rule 23(e)(1). The Settlement Notice attached as **Exhibit 1.A** fully apprises Settlement Class Members of the existence of the lawsuit and the claims asserted, the proposed Settlement Agreement and the information they need to make informed decisions about their rights. This includes (i) the risks attendant to continued litigation, (ii) the terms and operation of the Settlement Agreement; (iii) the nature and extent of the release; (iv) the maximum Attorneys' Fees, Expenses and Case Contribution Fee that will be sought; (v) the procedure and timing for objecting to the Settlement Agreement; and (vi) the date and place of the Fairness Hearing.

Because the Settlement Class Members are, or were, customers of Merrill, they are identifiable. Merrill has current or last-known contact information for them. The Settlement Notice will be sent to the Settlement Class Members by first-class mail or email (when available) within 30 days of the entry of a Preliminary Approval Order. Within that time, the Settlement Administrator shall also establish a Settlement Website containing the Settlement Notice and the Settlement Agreement, and a toll-free Settlement Information Line to which Settlement Class Members can direct questions about the Settlement.

CASE NO. 15-cv-22782-Cooke/Torres

In sum, the form of Settlement Notice and proposed procedures for notice satisfy the requirements of due process, and should be approved.

## VII.    REQUEST FOR FAIRNESS HEARING

Rule 23(e)(2) provides that if a settlement proposal would bind class members, the court may give final approval of it "only after a hearing and on a finding that it is fair, reasonable, and adequate."  Plaintiffs therefore ask this Court to set a Fairness Hearing for the purpose of considering the fairness, reasonableness and adequacy of the Settlement Agreement, the payment of Attorneys' Fees, Expenses and a Case Contribution Fee, and whether the Settlement Agreement should be finally approved.  Class Counsel will file a memorandum in support of final approval prior to the Fairness Hearing.  Plaintiffs respectfully request that the Fairness Hearing be set for a date approximately 100 days from the entry of the Preliminary Approval Order.  This would allow ample time for notice to the Class Members and for the Parties to address any objections that may be filed.

## VIII.   CONCLUSION

For the reasons stated above, Plaintiffs ask this Court grant (i) preliminary approval of the Settlement of this Action; (ii) certification of the Settlement Class; (iii) approval of the form and manner of the Settlement Notice; and (iv) a Fairness Hearing, as well as any other or further relief the Court deems necessary or proper.

CASE NO. 15-cv-22782-Cooke/Torres

Respectfully submitted,

RODRIGUEZ TRAMONT & NUÑEZ P.A.

By:  /s/ Frank R. Rodriguez
     Frank R. Rodriguez
     Florida Bar No. 348988
     Primary email: frr@rtgn-law.com
     Paulino A. Núñez Jr.
     Florida Bar No. 814806
     Primary email: pan@rtgn-law.com
     255 Alhambra Circle
     Suite 1150
     Coral Gables, FL 33134
     Telephone: (305) 350-2300
     Facsimile: (305) 350-2525

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP

By: /s/Jason Kellogg
     Lawrence A. Kellogg, P.A.
     Florida Bar No. 328601
     Primary email: lak@lklsg.com
     Jason Kellogg
     Florida Bar No. 0578401
     Primary email: jk@lklsg.com
     201 South Biscayne Boulevard
     Miami Center, 22nd Floor
     Miami, FL 33131
     Telephone: (305) 403-8788
     Facsimile: (305) 403-8789

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 8, 2017, I served a copy of the foregoing upon all counsel of record through the Court's CM/ECF filing system.

/s/ Jason Kellogg
Jason Kellogg