# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**No. 15-22782-cv-MGC**

BENJAMIN FERNANDEZ, GUSTAVO MARTINEZ,
and OSCAR LUZURIAGA, as trustees of and on
behalf of the LAAD RETIREMENT PLAN, and as
trustees of and on behalf of the LAAD
CORPORATION S.A. MONEY PURCHASE
RETIREMENT PLAN, and on behalf of all others
similarly situated,

                Plaintiffs,

    vs.

MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED,

                Defendant.

_____/

**SETTLEMENT AGREEMENT AND RELEASE**

## TABLE OF CONTENTS

Page

I.    DEFINITIONS ........................................................................................................ 2

II.    CLASS CERTIFICATION ...................................................................................... 8

III.    MOTION FOR PRELIMINARY APPROVAL ................................................... 9

IV.    PAYMENTS TO THE CLASS .............................................................................. 10

V.    SETTLEMENT ADMINISTRATION ................................................................. 16

VI.    RELEASES, COVENANTS AND INJUNCTION ............................................ 18

VII.    CASE CONTRIBUTION FEE TO PLAINTIFFS .............................................. 19

VIII.    ATTORNEYS' FEES AND EXPENSES ............................................................. 20

IX.    PLAN OF ALLOCATION .................................................................................... 21

X.    CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT ...................................................................................................... 23

XI.    NO ADMISSION OF WRONGDOING .......................................................... 24

XII.    MISCELLANEOUS ............................................................................................... 25

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into on June 8, 2017 by and among Plaintiffs, Benjamin Fernandez, Gustavo Martinez, and Oscar Luzuriaga (collectively, "Plaintiffs"), as trustees of and on behalf the LAAD Retirement Plan and the LAAD Corporation S.A. Money Purchase Retirement Plan, on their own behalf and on behalf of the Settlement Class (defined below), and Defendant, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch" or "Defendant").

## RECITALS

WHEREAS, on July 27, 2015, Plaintiffs filed a putative class action against Merrill Lynch in the United States District Court for the Southern District of Florida, on their own behalf and on behalf of others similarly situated, asserting claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*;

WHEREAS, Defendant has denied, and continues to deny, any liability for the Claims;

WHEREAS, prior to the deadline for filing motions for summary judgment and supplemental briefing regarding Plaintiffs' then-pending motion for class certification, the Plaintiffs and Defendant participated in private mediation in March 2017;

WHEREAS, during the course of litigation and settlement discussions, the Parties exchanged substantial documentation and engaged in extensive discovery, and were able to fully evaluate the merits of their respective claims and defenses;

WHEREAS, after extensive arm's-length negotiations supervised by the Mediator, who is expert in such matters, the Parties reached a settlement;

WHEREAS, Plaintiffs and Class Counsel consider it desirable and in the Settlement Class Members' best interests that the claims against Defendant be settled on behalf of Plaintiffs and the Settlement Class upon the terms set forth below, and they have concluded that such

1

terms are fair, reasonable, and adequate, and that that this settlement will result in significant benefits to the Settlement Class;

WHEREAS, Defendant admits no wrongdoing or liability with respect to any of the allegations or claims in the Complaint, and this Settlement Agreement and the settlement discussions between the Parties preceding it shall not constitute, be construed as, or be deemed evidence of, an admission or concession of fault or liability of any kind by Merrill Lynch;

WHEREAS, the Parties have concluded that it is desirable that this matter be finally settled upon the terms and conditions set forth in this Settlement Agreement;

WHEREAS, the Parties have reached an agreement to settle the Claims in the Action on the terms and conditions set forth in this Agreement;

WHEREAS, the Parties have decided to enter into this Settlement because it provides substantial and meaningful benefits to the Members of the Class and to avoid the uncertainties of continued litigation; and

NOW, THEREFORE, it is agreed, by and among the undersigned, that this Action shall be settled and dismissed with prejudice on the terms and conditions set forth herein, subject to judicial approval.

## I.   DEFINITIONS

1.1    "Account" shall mean a Merrill Lynch brokerage account or sub-account.

1.2    "Action" shall mean the lawsuit styled "*Benjamin Fernandez, Gustavo Martinez, Oscar Luzuriaga, and Daniel Araujo, as trustees of and on behalf of the LAAD Retirement Plan, and as trustees of and on behalf of the LAAD Corporation S.A. Money Purchase Retirement Plan, and on behalf of all others similarly situated, Plaintiffs, v. Merrill Lynch, Pierce, Fenner & Smith Incorporated, Defendant,*" Case No. 15-22782-cv-MGC, filed with the Court on July 27, 2015.

2

1.3     "Administration Costs" shall mean: (i) the costs and expenses associated with the production and dissemination of the Settlement Notice; (ii) the costs and expenses associated with the transmittal of the Settlement Payments to Settlement Class Members; and (iii) all reasonable costs incurred by the Settlement Administrator in administering and effectuating this Settlement, which costs and expenses are necessitated by performance and implementation of this Settlement Agreement and any Court orders relating thereto.

1.4     "Attorneys' Fees" shall mean any and all attorneys' fees of Class Counsel for their past, present, and future work and efforts in connection with this Action and the resulting Settlement.

1.5     "AWC" shall mean the FINRA Letter of Acceptance, Waiver, and Consent No. 20111029999301, executed by Merrill Lynch on June 6, 2014 and accepted by FINRA on June 16, 2014, and all exhibits, schedules, and attachments thereto.

1.6     "Case Contribution Fee" shall have the meaning ascribed to it in Section 7.1.

1.7     "Claims" means claims, liabilities, demands, causes of action or lawsuits, known or unknown, whether legal, statutory, equitable or of any other type or form, whether under federal or state law, however denominated, and whether brought in an individual, representative or any other capacity.

1.8     "Class Counsel" shall mean Levine Kellogg Lehman Schneider + Grossman LLP and Rodriguez Tramont & Núñez P.A.

1.9     "Complaint" shall mean the pleading styled "Class Action Complaint," filed with the Court on July 27, 2015 as Docket Entry No. 1 in the Action.

1.10    "Corrective Remediation Payment" shall have the meaning ascribed to it in paragraph 9.1.

1.11    "Court" means the United States District Court for the Southern District of Florida.

1.12    "Defendant's Counsel" shall mean Morgan, Lewis & Bockius, LLP.

1.13    "Defendant's Released Parties" shall mean Merrill Lynch, Bank of America Corporation, and each of their respective present, past and future successors, predecessors, parent organizations, subsidiaries, affiliates, partners, joint venturers, officers, directors, shareholders, fiduciaries, administrators, employee benefit plans, members, employees, managers, trustees, agents, representatives, attorneys, and assigns.

1.14    "Disgorgement Payment" shall have the meaning ascribed to it in paragraph 9.2.

1.15    "Distributable Settlement Amount" shall have the meaning ascribed to it in Section 4.2(a).

1.16    "DOL" shall mean the United States Department of Labor.

1.17    "Effective Date" shall mean the date upon which the Final Order and Judgment becomes both final and no longer subject to appeal or review (or further appeal or review), whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.18    "Escrow Account" shall mean an account at an established financial institution agreed upon by the Parties that is established for the deposit of any amounts relating to the Settlement.

1.19    "Fairness Hearing" shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive Final Approval by the Court.

1.20    "Fee and Expense Application" shall mean the petition, to be filed by Class Counsel, seeking approval of an award of Attorneys' Fees and Reimbursable Expenses.

4

1.21    "Final Approval" shall mean the entry of the Final Order and Judgment.

1.22    "Final Order and Judgment" or "Final Approval Order" shall mean a final Order entered by the Court after the Fairness Hearing, substantively identical in all material respects to that attached hereto as Exhibit C, granting its approval of the Settlement.

1.23    "FINRA" shall mean the Financial Industry Regulatory Authority.

1.24    "IRS Rate" shall mean the rate of interest set forth in § 6621(a)(2) of the Internal Revenue Code, 26 U.S.C. § 6621(a)(2).

1.25    "Lead Counsel" shall mean Rodriguez Tramont & Núñez P.A. and Levine Kellogg Lehman Schneider + Grossman LLP.

1.26    "Settlement Notice" shall mean the notice, substantively identical in all material respects to that attached hereto as Exhibit A, to be provided directly to Settlement Class Members pursuant to Section 3.2 and made available on the Settlement Website and the website of Lead Counsel following publication of the Summary Notice.

1.27    "Mediator" shall mean Hunter R. Hughes, III.

1.28    "Member of the Settlement Class" or "Settlement Class Member" shall mean any member of the Settlement Class as defined in paragraph 2.1.

1.29    "Omitted Remediation Account" shall mean any Account that should have received or been issued one or more Remediation Payments but was not issued such a payment, a definitive list of which Accounts is attached hereto as Exhibit D.

1.30    "Participant" shall have the meaning ascribed to it in ERISA § 3(7), 29 U.S.C. § 1002(7).

1.31    "Parties" shall mean Plaintiffs and Defendant (individually and/or collectively).

1.32    "Plaintiffs' Counsel" shall mean Class Counsel.

1.33   "Plans" shall mean those employee pension benefit plans, as that phrase is defined in ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), the trustees or fiduciaries of which are Settlement Class Members.

1.34   "Plan of Allocation" shall mean the plan or formula of allocation of the Distributable Settlement Amount as approved by the Court, which plan or formula shall govern the distribution of the Distributable Settlement Amount, as reflected in Section IX of this Settlement Agreement.

1.35   "Preliminary Approval Order" shall mean an order entered by the Court preliminarily approving the Settlement pursuant to paragraph 3.1, substantively identical in all material respects to that attached hereto as Exhibit B.

1.36   "RCMA 05" shall mean the retirement Account product offered by Merrill Lynch known as the "Retirement Cash Management Account" and classified by Merrill Lynch as an "05" or "retail pricing" Account product, and which Account product was one of the subjects of the AWC.

1.37   "Reimbursable Costs" shall mean any and all costs and expenses, including expert costs and expenses, of Class Counsel for their expenditures made in connection with this Action and the resulting Settlement.

1.38   "Released Claims" shall mean any and all Claims, including Unknown Claims, that were or could have been pleaded in the Complaint against any one or more of Defendants' Released Parties by reason of: (a) any Claim or facts pleaded in the Complaint, or (b) any Claims that could have been pleaded in the Complaint based on the same factual predicate, including, but not limited to, any Claims relating directly or indirectly to the fees and sales charges charged to RCMA 05 Accounts and profits and revenue arising therefrom.

Case 1:15-cv-22782-MGC   Document 169-1   Entered on FLSD Docket 06/08/2017   Page 10 of 34

1.39   "Remediation Payment" shall mean any payment, whether issued by check, Account credit, or any other form, and whether cashed, negotiated, or escheated, made by Merrill Lynch to any person with an interest in an RCMA 05 Account to refund, remediate, correct, return, and/or reduce front-end sales charges, contingent deferred sales charges, and/or distribution, service, and/or "12b-1" fees, either: (a) as required by or pursuant to the AWC; or (b) pursuant to Merrill Lynch's voluntary remediation of RCMA 05 Accounts in 2013, as described in the AWC; or (c) both (a) and (b).

1.40   "Settlement" shall mean the compromise and resolution embodied in this Settlement Agreement.

1.41   "Settlement Administrator" shall mean Garden City Group.

1.42   "Settlement Amount" shall mean the amount of $25,000,000.

1.43   "Settlement Class" shall have the meaning ascribed to it in paragraph 2.1.

1.44   "Settlement Payment" shall mean that portion of the Distributable Settlement Amount paid or payable to a specific Settlement Class Member, as calculated pursuant to paragraph 9.3.

1.45   "Settlement Website" shall have the meaning ascribed to it in paragraph 3.4.

1.46   "Taxes" shall have the meaning ascribed to it in paragraph 4.1(g).

1.47   "Tax-Related Costs" shall have the meaning ascribed to it in paragraph 4.1(g).

1.48   "Unknown Claims" shall mean any Released Claims which Plaintiffs or any Member of the Settlement Class does not know or suspect to exist in their favor at the time of the release of the Defendant's Released Parties relating to the claims and allegations asserted in the Action which, if known by them, might have affected their settlement with and release of the

Defendant's Released Parties, or might have affected their decision not to object to this Settlement.

## II.   CLASS CERTIFICATION

2.1   ***Stipulation to Settlement Class***.  Solely for purposes of the Settlement and for no other purpose, each of the Parties stipulates and agrees to the Action proceeding as a class action under Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs shall seek, and Defendant will not oppose, certification of a mandatory class, referred to herein as the "Settlement Class," pursuant to Rule 23(b)(1), for settlement purposes only, consisting of the trustees and named fiduciaries of each Plan:

(a)   that, at any time between January 1, 2006 and July 13, 2012, held any interest in one or more RCMA 05 Accounts, whether

(1)   in the name of the Plan, or

(2)   in the name of a trustee or named fiduciary on behalf of the Plan, or

(3)   for the benefit of a Participant in the Plan; and

(b)   that either

(1)   received, or was issued, whether for the benefit of the Plan or a Participant in the Plan, a Remediation Payment in any amount, or

(2)   held an interest in an Omitted Remediation Account.

2.2   ***No Agreement or Admission.***  Nothing in this Settlement Agreement shall be construed as an agreement or admission by Defendant that the Action or any similar case is amenable to class certification for trial purposes.  Nothing in this Settlement Agreement shall be construed as an agreement or admission by Plaintiffs that the Action or any similar case is not amenable to class certification for trial purposes.

2.3     *No Waiver.*  Nothing in this Settlement Agreement shall prevent Plaintiffs from seeking class certification or appealing any denial of class certification if the Settlement does not reach Final Approval or if the Effective Date does not occur for any reason.  Nothing in this Settlement Agreement shall prevent Defendant from opposing or appealing class certification or seeking de-certification of any class if the Settlement does not reach Final Approval or if the Effective Date does not occur for any reason.

## III.     MOTION FOR PRELIMINARY APPROVAL

3.1     *Motion for Preliminary Approval.*  As soon as is practicable after execution of this Agreement, Plaintiffs shall move the Court for preliminary approval of the Settlement, including entry of an Order substantively identical in all material respects to the form of the Preliminary Approval Order attached as Exhibit B hereto.

3.2     *Settlement Notice.*  Within twenty (20) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall send the Settlement Notice by first-class mail or electronic mail (if available) to the Settlement Class Members.  The Settlement Notice will be sent to the last known electronic mail address (if any) or last known mailing address of the Settlement Class Member, which mailing address has been supplied by Defendant and updated through the National Change of Address database by the Settlement Administrator before mailing (with all returned mail skip-traced and promptly re-mailed), and will be in the form attached hereto as Exhibit A.

3.3     *Class Action Fairness Act Notice.*  Within 10 days after filing of this Agreement with the Court, Defendant shall comply with the notice requirements of 28 U.S.C.  § 1715, and shall file a notice confirming compliance prior to the Fairness Hearing.

3.4     *Settlement Website.*  Within twenty (20) days of the entry of the Preliminary Approval Order and no later than the first date that the mailing of the Settlement Notice occurs,

the Settlement Administrator shall establish the Settlement Website, which will contain the Settlement Notice and this Settlement Agreement and its exhibits.  The Settlement Notice will identify the web address of the Settlement Website.

    3.5    *Settlement Information Line.*  Within twenty (20) days of the entry of the Preliminary Approval Order, and no later than the first date of mailing of the Settlement Notice, the Settlement Administrator shall establish a toll-free telephone number (the "Settlement Information Line") to which Settlement Class Members can direct questions about the Settlement.  The Settlement Administrator shall develop a question-and-answer-type script, with input and approval from Defendant's and Plaintiffs' Counsel, for the use of persons who answer calls to the Settlement Information Line.

    3.6    *Right to Object.*  Members of the Settlement Class, the DOL and any other federal or state governmental entity, agency or instrumentality with an interest in the Settlement shall be permitted to object to the Settlement.  Requirements for filing an objection shall be as set forth in the Preliminary Approval Order.

## IV.    PAYMENTS TO THE CLASS

    4.1    *The Settlement Amount.*

        (a)    Defendant shall cause the Settlement Amount to be deposited into the Escrow Account within fourteen (14) days of entry of the Final Order and Judgment.

        (1)    The Settlement Amount shall be used solely for the purposes set forth in paragraph 4.1(h) below.

        (2)    The Settlement Class Members agree that no funds from the Settlement Amount shall be considered "plan assets," as that term is defined in ERISA and the regulations promulgated pursuant to ERISA, until such time as: (a) a check that is a Settlement Payment is cashed or negotiated by a Settlement Class Member, (b) a transfer or Account credit

10

that is a Settlement Payment is received in the Settlement Class Member's Account, or (c) a Settlement Payment escheats pursuant to paragraph 4.3; but only to the extent of the funds so cashed, negotiated, received, or escheated. The Settlement Class Members further agree that the Parties are not exercising any discretion over the Settlement Amount as part of this Settlement, and that the Settlement Class Members, as fiduciaries of their Plans, shall be solely responsible for all fiduciary decisions related to the use of any proceeds of the Distributable Settlement Amount and of any Settlement Payment.

(b)     Subject to Court approval and oversight, the Escrow Account will be controlled by the Settlement Administrator. Neither Defendant nor Plaintiffs shall have any liability whatsoever for the acts or omissions of the Settlement Administrator appointed by the Court. The Settlement Administrator shall not disburse the Settlement Amount or any portion thereof except as provided for in this Agreement, by an Order of the Court, or with prior written agreement of Plaintiffs' Counsel and Defendant's Counsel.

(c)     The Settlement Administrator is authorized to execute transactions on behalf of the Settlement Class Members that are consistent with the terms of this Agreement and with Orders of the Court.

(d)     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Settlement Agreement.

(e)     The Settlement Administrator shall, to the extent practicable, invest the Settlement Amount pursuant to paragraph 4.1(a) above in discrete and identifiable instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these

11

instruments as they mature in similar instruments at their then-current market rates. The Settlement Administrator shall maintain records identifying in detail each instrument in which the Settlement Amount or any portion thereof has been invested, and identifying the precise location (including safe deposit box number) of each such instrument. Neither the Settlement Amount nor any portion thereof shall be commingled with any other monies in any instruments. Any cash portion of the Settlement Amount not invested in instruments of the type described in the first sentence of this paragraph shall be maintained by the Settlement Administrator, and not commingled with any other monies, in a bank account, which shall promptly be identified to Plaintiffs' Counsel and Defendant's Counsel upon request by account number and any other identifying information. The Settlement Administrator and Settlement Class Members shall bear all risks related to investment of the Settlement Amount. All income, gain, or loss earned by the investment of the Settlement Amount shall be credited to the Escrow Account.

    (f)    The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1. The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account. No later than February 15 of the year following the calendar year in which Defendant makes a transfer to the Qualified Settlement Fund pursuant to the terms of this Settlement Agreement, Defendant shall timely furnish a statement to the Settlement Administrator that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468B-3(e)(2)(ii), and shall attach a copy of the statement to its federal income tax returns filed for the taxable year in which Defendant makes a transfer to the Qualified Settlement Fund. Neither Defendant,

Defendant's Counsel, Plaintiffs, or Plaintiffs' Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

(g)     All (i) taxes on the income of the Escrow Account ("Taxes") and (ii) expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Settlement Administrator out of the Escrow Account.

(h)     The Settlement Amount, together with any interest accrued thereon, will be used to pay the following amounts associated with the Settlement:

> (i)     Compensation to Settlement Class Members determined in accordance with paragraph 4.2 and Section IX;
>
> (ii)    Any Case Contribution Fee;
>
> (iii)   All Attorneys' Fees and Reimbursable Expenses approved by the Court; and
>
> (iv)    Taxes and Tax-Related Costs.

4.2     ***Distribution to Settlement Class Members.***

(a)     The money remaining from the Settlement Amount, including any accrued interest thereon, after the payment of any approved Case Contribution Fee, approved Attorneys' Fees, approved Reimbursable Costs and Taxes and Tax-Related Costs, shall be available for distribution to Settlement Class Members (the "Distributable Settlement Amount").

(b)     The Distributable Settlement Amount shall be divided among Settlement Class Members in accordance with the Plan of Allocation set forth in Section IX below.

(c)     The Settlement Administrator shall disburse the Distributable Settlement Amount as promptly as possible after the Effective Date and, in any event, no later than two hundred-seventy (270) days after the Effective Date.

13

(d)      In Defendant's sole discretion and at Defendant's expense, and provided that Defendant notifies the Settlement Administrator within thirty (30) days after the Effective Date of its election, Defendant may elect to effect the Settlement Payments to some or all Settlement Class Members who hold open Accounts with Defendant by making a journal entry cash credit to those Accounts in the amount of the Settlement Payments due to those Settlement Class Members.  If Defendant exercises this option, then, within fifteen (15) days after Defendant provides satisfactory proof to the Settlement Administrator that Defendant has made these Account credits, including specifically the amount of each such Settlement Payment and the corresponding Account number credited, the Settlement Administrator shall reimburse Defendant the total amount of Settlement Payments that Defendant has so paid.  The Settlement Administrator shall retain records of any such payments and provide those records to Class Counsel upon request.

(e)      The Settlement Administrator shall make all Settlement Payments, other than those Settlement Payments made by Account credit pursuant to paragraph 4.2(d) above, by check made payable to the holder of the Settlement Class Member's Account according to Defendant's records.

(f)      The Settlement Administrator shall provide a mechanism for Settlement Class Members to request a different payee for the Settlement Payment where the Plan's trustees or named fiduciaries have changed, the Plan's legal name has changed, the Plan has been consolidated, or other changed circumstances require a change of payee in order for the Settlement Payment to benefit the Plan.  Upon receipt of an affidavit and documentary proof acceptable to the Settlement Administrator, the Settlement Administrator shall reissue the check

to the new payee. The Settlement Administrator shall retain records of any such changes in payees and provide those records to Class Counsel and/or Defendant's Counsel upon request.

(g)   Settlement Class Members must cash or otherwise negotiate and present Settlement Payment checks within ninety (90) days of issuance. If they do not do so, the checks will be void. This limitation shall be printed on the face of each check. For any checks that are mailed but become void after the first issuance, the Settlement Administrator shall reissue and undertake a second mailing of such checks. Settlement Class Members must cash or otherwise negotiate and present such reissued checks within ninety (90) days of reissuance or those reissued checks will be void. The voidance of checks shall have no effect on the Settlement Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

4.3   ***Treatment of Uncashed Checks.*** If any Settlement Payment checks are issued and reissued pursuant to paragraph 4.2(g) above but remain uncashed ninety-one (91) days after reissuance, then the Settlement Administrator shall, within one hundred eighty (180) days after the check's reissuance date, forward the amount of such Settlement Payment to the appropriate escheat, unclaimed property, or abandoned property fund for the state in which the payee Settlement Class Member is last known to have resided. The Settlement Administrator shall retain records of any such escheatment and provide those records to Class Counsel and/or Defendant's Counsel upon request.

4.4   ***Certification of Settlement Administrator.*** Within fourteen (14) days of completing all actions required by paragraphs 4.2 and 4.3, the Settlement Administrator shall send to Defendant and Defendant's Counsel one or more affidavits stating the following: (a) the name of each Settlement Class Member to whom the Settlement Administrator sent the

Settlement Notice, and the address of such mailing; (b) the date(s) upon which the Settlement Administrator sent the Settlement Notice; (c) the name of each Settlement Class Member whose Settlement Notice was returned as undeliverable; (d) the efforts made by the Settlement Administrator to find the correct address and to deliver the Settlement Notice for each such Settlement Class Member; and (e) the name of each Settlement Class Member to whom the Settlement Administrator made a distribution from the Net Distributable Amount, together with the amount (and form if by reimbursement to Defendant under paragraph 4.2(d)) of the distribution, the name of the payee, the date of distribution, the amount of tax withholdings, if applicable, and the date of remittance of tax withholdings to the appropriate tax authority, if applicable.

4.5     ***Administration Costs.***  Separate from the Settlement Amount, Defendant shall pay the Settlement Administrator for Administration Costs upon receipt of invoices for such expenses from the Settlement Administrator.

4.6     ***Entire Monetary Obligation.***  In no event, and notwithstanding anything else in this Settlement Agreement, shall Defendant be required to pay any amounts other than the Settlement Amount and the Administration Costs.  It is understood and agreed that Defendant's monetary obligations under this Settlement Agreement will be fully discharged by paying the amounts specified in paragraphs 4.1(a) and 4.5 above, and that Defendant shall have no other monetary obligations, or obligations to make any other payments under this Settlement Agreement or otherwise in connection with this Settlement.

## V.     SETTLEMENT ADMINISTRATION

5.1     The Settlement Administrator shall administer the Settlement subject to the supervision of Lead Counsel and the Court as circumstances may require.

16

5.2     Defendant, Defendant's Counsel, Defendant's Released Parties and Plaintiffs shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)     the fairness of the terms of the Settlement Agreement to any Plan, its fiduciaries, participants, or beneficiaries;

(b)     any act, omission or determination of the Settlement Administrator, Plaintiffs' Counsel or designees or agents of Plaintiffs' Counsel or the Settlement Administrator;

(c)     any act, omission or determination of Plaintiffs' Counsel or their designees or agents in connection with the administration of the Settlement;

(d)     the management, investment, or distribution of the Settlement Amount or the Distributable Settlement Amount;

(e)     the determination, administration, calculation, or payment of any claims asserted against the Settlement Amount or the Distributable Settlement Amount;

(f)     the development or execution of the Plan of Allocation; or

(g)     Settlement Class Members' decisions related to the use of any proceeds of the Distributable Settlement Amount.

5.3     "Class Counsel" shall have no responsibility for, interest in, or liability whatsoever, with respect to:

(a)     The fairness of the terms of the Settlement Agreement to any particular Plan, its fiduciaries, participants, or beneficiaries;

(b)     The development of the Plan of Allocation; or

(c)     Settlement Class Members' decisions related to the use of any proceeds of the Distributable Settlement Amount.

17

5.4     The Settlement Administrator shall provide to the Lead Counsel, no less than
monthly, a full accounting of all expenditures made in connection with the Settlement, including
Administration Costs, and any distributions from the Settlement Amount.

5.5     The Settlement Administrator shall provide such information as may be
reasonably requested by Plaintiffs or Defendant to implement any distribution of funds under this
Agreement.

## VI.     RELEASES, COVENANTS AND INJUNCTION

6.1     Upon entry of the Final Approval Order, the Settlement Class Members, on behalf
of themselves, their predecessors, successors and assigns, in their fiduciary capacities for the
Plans and, to the extent any Class Members are also Participants in the Plans, as Participants in
the Plans, and for all beneficiaries of and Participants in the Plans, shall be deemed to have, and
by operation of the Final Order and Judgment shall have, fully, finally, and forever released,
relinquished and discharged Defendants' Released Parties from each and every Released Claim.

6.2     *Injunction.*  Upon the Effective Date, all Plaintiffs and the Settlement Class
Members shall be enjoined from instituting, maintain, prosecuting, or asserting any Claim, cause
of action, or demand on the basis of, connected with, or arising out of the Released Claims,
whether arising before or after the date of the Final Order and Judgment, against any and all of
Defendant's Released Parties.  Nothing herein is meant shall bar any claim seeking enforcement
of this Settlement Agreement, the Preliminary Approval Order, or the Final Approval Order.

6.3     *Unknown Facts.*  Plaintiffs, Class Counsel, and the Settlement Class Members
may hereafter discover facts in addition to or different from those that they know or believe to be
true with respect to the Released Claims.  Such facts, if known by them, might have affected the
decision to settle with Defendants, the Plans, and the Released Parties, or the decision to release,
relinquish, waive, and discharge the Released Claims, or the decision of a Settlement Class

18

Member not to object to the Settlement. Notwithstanding the foregoing, each Settlement Class Member and the Plans shall expressly, upon the entry of the Final Approval Order, be deemed to have, and by operation of the Final Approval Order, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Settlement Class Members acknowledge and shall be deemed by operation of the Final Approval Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

6.4     *Unknown Claims.* Each Plaintiff and Settlement Class Member and the Plans hereby stipulate and agree with respect to any and all Released Claims that, upon entry of the Final Approval Order, the Settlement Class Members shall be conclusively deemed to, and by operation of the Final Approval Order shall, settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Upon entry of the Final Approval Order, The Plaintiffs and Settlement Class Members, shall also, with respect to the Released Claims, waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

## VII.    CASE CONTRIBUTION FEE TO PLAINTIFFS

7.1     *Case Contribution Fee.* Plaintiffs, on behalf of their Plans, intend to seek a Case Contribution Fee in the amount of $150,000 in the aggregate, which shall be subject to Court

19

approval (the "Case Contribution Fee"). Defendant shall not oppose a Case Contribution Fee up to that amount. Any Case Contribution Fee approved by the Court shall be paid within ten (10) days of entry of the Final Approval Order. The Case Contribution Fee shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount on or after entry of the Final Approval Order and prior to the distribution to the Settlement Class Members.

7.2     ***No Termination.*** Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of any application for the Case Contribution Fee shall be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any Order or proceedings relating to the Case Contribution Fee, or any appeal of any Order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## VIII.   ATTORNEYS' FEES AND EXPENSES

8.1     ***Fee and Expense Application.*** Plaintiffs' Counsel intends to submit a Fee and Expense Application, seeking Attorneys' Fees based on the value of the Settlement and the work performed in the amount of 35% of the Settlement Amount (i.e., $8,750,000), plus reasonable Reimbursable Expenses not to exceed $300,000, and Defendant will not oppose the Fee and Expense Application up to this amount. Any amount awarded by the Court in response to such Fee and Expense Application shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount and paid to Lead Counsel within fourteen (14) days of entry of the Final Approval Order. The amount awarded by the Court shall earn interest from the date that the Settlement Amount is deposited into the Escrow Account.

20

8.2     *No Termination.*  Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of the Fee and Expense Application to be paid out of the Settlement Amount shall be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any Order or proceedings relating to the award of Attorneys' Fees, or any appeal of any Order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## IX.     PLAN OF ALLOCATION

9.1     *Corrective Remediation Payment.*  For each Settlement Class Member who received or was issued a Remediation Payment, Defendant will calculate a "Corrective Remediation Payment" equal to: (a) the amount by which each Settlement Class Member's Remediation Payment or Remediation Payments were, if at all, deficient or otherwise below the intended Remediation Payment(s), and (b) interest thereon to the date of payment of the Settlement Payment at the IRS Rate.  For each Settlement Class Member who did not receive and was not issued a Remediation Payment, Defendant will calculate a Corrective Remediation Payment equal to: (a) the Remediation Payment that the Settlement Class Member should have received, and (b) interest thereon to the date of payment of the Settlement Payment at the IRS Rate.  Each Settlement Class Member's Settlement Payment will include the entire amount of that Settlement Class Member's Corrective Remediation Payment.

9.2     *Disgorgement Payment.*  That portion of the Settlement Amount that exceeds the total of Corrective Remediation Payments shall be considered disgorgement and restoration of profits within the meaning of ERISA § 409(a), 29 U.S.C. § 1109(a).  The Settlement Administrator shall calculate the Disgorgement Payment for each Settlement Class Member by: (a) subtracting the total of Corrective Remediation Payments from the Distributable Settlement

21

Amount to determine the total disgorgement amount, and (b) apportioning the total disgorgement amount among all Settlement Class Members in proportion to each Settlement Class Member's average year-end RCMA 05 Account balance for calendar years 2006, 2007, 2008, 2009, 2010, 2011, and 2012, treating any year in which the Settlement Class Member's Account was closed or not yet opened as a zero balance.

9.3     *Settlement Payment.*  The Settlement Payment for each Settlement Class Member is the sum of the Corrective Remediation Payment to that Settlement Class Member and the Disgorgement Payment to that Settlement Class Member, and Class Counsel specifically acknowledges that the component parts of the Settlement Payments for each Settlement Class Member each constitute adequate consideration for the Releases set forth in paragraph 6.1 above.

9.4     *Tax Obligations.*  The Parties acknowledge that any payments to Settlement Class Members or their attorneys may be subject to applicable tax laws.  Defendant, Defendant's Counsel, Class Counsel, and Plaintiffs will provide no tax advice to the Settlement Class Members and make no representation regarding the tax consequences of any of the settlement payments described in this Settlement Agreement. To the extent that any portion of any settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax.  Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement.  Each Settlement Class Member who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person.  Each Settlement Class Member shall hold Defendant, Defendant's Released Parties, Defendant's Counsel, Plaintiffs, Class Counsel, and the Settlement Administrator harmless from

22

any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold Defendant, Defendant's Released Parties, Defendant's Counsel, Plaintiffs, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

## X.   CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT

10.1   If the Court or, in the event of an appeal, any appellate court refuses to approve, or modifies any material aspect of this Agreement or the proposed Preliminary Approval Order or Final Order and Judgment, including, but not limited to any judicial findings included therein, any of Plaintiffs or Defendant may terminate this Agreement and the Settlement as set forth below.

10.2   This Agreement and the Settlement shall terminate and be cancelled if, within ten (10) business days after any of the following events, one of the Parties provides written notification of an election to terminate the Settlement:

(a)   The Court declines to provide preliminary approval of this Agreement, or declines to enter or materially modifies the contents of the Preliminary Approval Order attached hereto as Exhibit B; or

(b)   The Court declines to provide final approval of this Agreement, or declines to enter or materially modifies the contents of the Final Order and Judgment attached hereto as Exhibit C; or

(c)   The Court's Final Order and Judgment is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date.

For purposes of this Agreement and this paragraph 10.2, no Order of the Court, or modification or reversal on appeal of any Order of the Court, solely concerning the administration of the Settlement or the person(s) performing such administrative functions, or the amount, advancement or award of any Attorneys' Fees or Case Contribution Fee shall constitute grounds for cancellation or termination of the Agreement.

10.3    This Agreement and the Settlement shall terminate and be cancelled if (a) any federal or state authorities object to material terms of the Agreement or request material modifications to the Agreement; and (b) within thirty (30) days of receiving any such objection or request, Plaintiffs or Defendant provide written notice to the other of its election to terminate the Settlement.

10.4    If for any reason this Agreement is terminated or fails to become effective, then:

(a)    The Parties shall be deemed to have reverted to their respective status in the Action as of May 10, 2017, which shall then resume proceedings in the Court, and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

(b)    In addition to this Section X and its provisions, Section XI shall survive any termination of this Settlement.

## XI.    NO ADMISSION OF WRONGDOING

11.1    Defendant vigorously denies, and continues to deny, that it committed any violation of ERISA or other laws, and has vigorously denied and continues to deny all allegations of wrongdoing or liability whatsoever with respect to the Released Claims, including any and all claims of wrongdoing or liability alleged or asserted in the Action. The Parties agree to this Settlement solely because it will eliminate the burden, expense and uncertainties of further litigation. This Agreement, and any of its terms, any agreement or order relating thereto, and any

payment or consideration provided for herein, is not and shall not be construed as an admission by Defendant or any of the Plaintiffs or Settlement Class Members of any fault, wrongdoing, or liability whatsoever, or an admission by Plaintiffs of any lack of merit of its claims against Defendant. This Agreement, and any of its terms, and any agreement or order relating thereto, shall not be offered by any Party to be received in evidence in any civil, criminal, administrative, or other proceeding, or utilized in any manner as a presumption, a concession, or an admission of any fault, wrongdoing, or liability on the part of Defendant. However, nothing contained in this paragraph shall prevent this Settlement Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Final Order and Judgment. This Settlement Agreement may be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including, but not limited to, the Parties' filing the Settlement Agreement and/or the Final Order and Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, waiver, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## XII.   MISCELLANEOUS

12.1   *No Disparaging Statements.*  Defendant, Defendant's Counsel, Plaintiffs, and Plaintiffs' Counsel shall make no statements to the press or public that disparage any Party.

12.2   *Duty to Cooperate.*  Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

12.3   *Entire Agreement.*  This Agreement is the entire agreement among the Parties and it supersedes any prior agreements, written or oral, between the Parties.  No representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the exhibits thereto.  This Settlement Agreement cannot be altered, modified or amended except through a writing executed by all Parties.

12.4   *Waiver.*  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions.  The waiver of any breach of this Settlement Agreement by any party shall not be deemed to be or construed as a waiver of any other breach or waiver by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

12.5   *Construction of Agreement.*  This Settlement Agreement shall be construed to effectuate the intent of the Parties to resolve all disputes encompassed by the Agreement.  All Parties have participated in the drafting of this Agreement, and any ambiguity shall not be resolved by virtue of a presumption in favor of any Party.  The Settlement Agreement was reached at arm's-length by the Parties, all of which were represented by counsel.  Any headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Sections or Paragraphs they caption.  References to a person are also to the person's permitted successors and assigns, except as otherwise provided herein.  Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but shall be deemed to be followed by the words "without limitation."

12.6   ***Executed in Counterparts.***  This Agreement may be executed in counterparts, all of which shall be considered the same as if a single document had been executed, and shall become effective when such counterparts have been signed by each of the Parties and delivered to each of the other Parties.  Counterpart copies of signature pages, whether delivered in original, by electronic mail in pdf format and/or by facsimile, taken together shall all be treated as original and binding signatures.

12.7   ***Notices.***  Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court Order sought in connection with the Agreement, shall be in writing and delivered personally or sent by certified mail or overnight delivery service, postage pre-paid, with copies by electronic mail to the attention of Plaintiffs' Counsel, or Defendant's Counsel (as well as to any other recipients that a court may specify).  As of the date hereof, the respective representatives are as follows:

**For Defendant:**

Donald Havermann
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Ave., N.W.
Washington, DC 20004
donald.havermann@morganlewis.com

**For Plaintiffs:**

Jason Kellogg
Levine Kellogg Lehman Schneider + Grossman LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, Florida  33131
jk@lklsg.com

Frank R. Rodriguez
Rodriguez Tramont & Núñez, P.A.
255 Alhambra Circle, Suite 1150
Coral Gables, Florida 33134
frr@rtgn-law.com

Case 1:15-cv-22782-MGC   Document 169-1   Entered on FLSD Docket 06/08/2017   Page 31 of 34

12.8    *Extensions of Time.*  The Parties may agree, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

12.9    *Governing Law.*  This Agreement shall be governed by and construed in accordance with ERISA and other federal law, and, to the extent that federal law does not govern, the laws of the State of New York without giving effect to any conflict of law provisions that would cause the application of the laws of any state other than New York.

12.10    *Fees and Expenses.*  Except as otherwise expressly set forth herein, each Party hereto shall pay all fees, costs and expenses incurred in connection with the Action, including fees, costs and expenses incident to his, her or its negotiation, preparation or compliance with this Agreement, and including any fees, expenses and disbursements of its counsel, accountants, and other advisors.  Nothing in this Agreement shall require Defendant to pay any monies other than as expressly provided herein.

12.11    *Advice of Counsel.*  Each party to this Settlement Agreement hereby acknowledges that he, she, or it has consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, or its counsel.

12.12    *Disputes.*  Class Counsel, Defense Counsel, and the Settling Parties agree that any and all disputes concerning compliance with the Settlement Agreement, with the exception of any and all disputes concerning compliance with Section VI, shall be exclusively resolved as follows:

(a)    If Class Counsel, Defense Counsel, or a Party has reason to believe that a legitimate dispute exists concerning the Settlement Agreement, the party raising the dispute shall first promptly give written notice under the Settlement Agreement to the other party including in

Case 1:15-cv-22782-MGC   Document 169-1   Entered on FLSD Docket 06/08/2017   Page 32 of 34

such notice: (a) a reference to all specific provisions of the Settlement Agreement that are involved; (b) a statement of the alleged non-compliance; (c) a statement of the remedial action sought; and (d) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the party raising the dispute;

(b)      Within twenty (20) days after receiving the notice described in subparagraph (a), the receiving party shall respond in writing with its position and the facts and arguments it relies on in support of its position;

(c)      For a period of not more than twenty (20) days following mailing of the response described in subparagraph (b), the Parties shall undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute;

(d)      If the dispute is not resolved during the period described in subparagraph (c), the parties shall conduct a mediation of the dispute with the Mediator on the earliest reasonably practicable date; provided, however, that the scope of such mediation shall be expressly limited to the dispute;

(e)      Within 30 days after the conclusion of the Mediator's attempt to resolve the dispute (the date of the conclusion of the mediation shall be determined by agreement of the parties or by the Mediator), if the dispute persists, either party may request that the Court resolve the dispute.

(f)      The Settling Parties will attempt to resolve any disputes quickly, expeditiously, inexpensively, and in good faith.

    (g)     In connection with any disputes concerning compliance with the Settlement Agreement, each party shall bear its own fees and costs unless the Court orders otherwise.

    12.13   ***Retention of Jurisdiction.***  As provided in the Final Approval Order, the Court retains exclusive jurisdiction over the interpretation and enforcement of the Settlement Agreement, including, but not limited to, any issues regarding the Parties and the Released Claims.

**Agreed to on behalf of Plaintiffs Benjamin Fernandez, Gustavo Martinez, and Oscar Luzuriaga, as trustees of and on behalf the LAAD Retirement Plan and the LAAD Corporation S.A. Money Purchase Retirement Plan, and the Class:**

Dated: June 8, 2017

By: _____
Jason Kellogg
Levine Kellogg Lehman Schneider + Grossman LLP
201 South Biscayne Boulevard, 22nd Floor
Miami, Florida 33131
jk@lklsg.com

Dated: June 8, 2017

By: _____
Paulino A. Núñez Jr.
Rodriguez Tramont & Núñez, P.A.
255 Alhambra Circle, Suite 1150
Coral Gables, Florida 33134
pan@rtgn-law.com

**Agreed to on behalf of Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated:**

Dated: June 2, 2017

By: _____
Alexander T. Sarafoglu
Associate General Counsel and Director
Bank of America | Merrill Lynch

Dated: June 8, 2017

By: _____
Donald L. Havermann
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
donald.havermann@morganlewis.com