# Exhibit 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 15-22782-cv-MGC**

BENJAMIN FERNANDEZ, GUSTAVO MARTINEZ, OSCAR LUZURIAGA, and DANIEL ARAUJO as trustees of and on behalf of the LAAD RETIREMENT PLAN, and as trustees of and on behalf of the LAAD CORPORATION S.A. MONEY PURCHASE RETIREMENT PLAN, and on behalf of all others similarly situated,

Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED,

Defendant.
_______________________________________/

**JOINT DECLARATION OF CLASS COUNSEL**

JASON KELLOGG AND FRANK R. RODRIGUEZ declare the following under penalty of perjury:

1. We have personal knowledge of the facts and matters alleged herein and can competently testify to same.

2. We are counsel of record for Plaintiffs and the proposed Settlement Class[1] in this action against Merrill Lynch.

3. After Plaintiffs approached Class Counsel about potential issues with the Remediation paid by Merrill, Class Counsel sent a letter to Merrill Lynch on June 5, 2015,

[1] All capitalized terms not otherwise defined herein have the same meaning as set forth in the Settlement Agreement [D.E. 169-1].

requesting a full accounting of the mutual fund sales charges paid by the LAAD Plans and an explanation of how the remediation payments to LAAD were calculated. Merrill Lynch maintained that it had made all required Remediation payments due to Plaintiffs and the other affected retirement plans. Dissatisfied with Merrill Lynch's responses, Class Counsel filed the Complaint on behalf of Plaintiffs and a putative Class on July 27, 2015.

4. Merrill Lynch moved to dismiss the Complaint, arguing that it was not an ERISA "fiduciary" and that Plaintiffs' claims were securities rather than ERISA claims. The Parties fully briefed the issues. The Court held oral argument on July 27, 2016, and denied Merrill Lynch's motion.

5. After the Complaint was filed, Merrill Lynch continued to repeatedly and steadfastly maintain — at a hearing before the Court and in its Answer — that it had made all required Remediation payments due to Plaintiffs and the other affected retirement plans.

6. In an extremely compressed time frame, Class Counsel engaged in extensive discovery efforts in a focused and efficient manner, with the dual goals of testing Merrill Lynch's Remediation and determining what profits Merrill Lynch had earned using the millions of dollars of sales charges and fees that had been incorrectly charged. Merrill Lynch repeatedly moved to extend discovery deadlines and also moved to stay the case. Class Counsel successfully opposed these motions.

7. Plaintiffs served nine discovery requests, filed six motions to compel and as a result were able to obtain more than 125,000 pages of financial and other documents from Merrill Lynch. Plaintiffs received thousands of additional records by subpoenaing FINRA and some of the 106 mutual funds sold by Merrill Lynch that offered sales charge waivers. These voluminous documents were analyzed by Class Counsel and their experts, many of

them simultaneously with their taking of depositions of Merrill Lynch's employees. Plaintiffs took five depositions of Merrill Lynch's employees, and defended six depositions of Plaintiffs and their experts. Class Counsel and Plaintiffs' data science expert Alan Spies spent hundreds of hours analyzing account statements and other documents, including raw data and dozens of complex spreadsheets produced by Merrill Lynch. Together, they analyzed and tested how the Remediation was designed and implemented by Merrill Lynch. Through these efforts, they determined that the Remediation was incorrect in several respects, not only in the amounts paid, but also in identifying all of the plans that were entitled to remediation. They also learned the categories and amounts of profits earned by Merrill Lynch due to the improper mutual fund sales charges to class members.

8. During this period of intensive discovery, Merrill Lynch's position on the remediation changed. After first maintaining that the LAAD Plans had received full remediation, it then admitted that this was not accurate; that in fact, the LAAD Plans had not received the entirety of the remediation to which they were entitled. Merrill Lynch nevertheless continued to maintain that this was a problem unique to LAAD, and did not affect any other retirement plan account. As Class Counsel and its experts continued to probe, however, Merrill Lynch identified deficiencies in the remediation that were applicable to additional customers. As time went on, and discovery continued, Merrill Lynch concluded and admitted that some customers eligible for remediation of certain CDSC charges had received nothing, and that the methodology used to compute interest was incorrect. It also determined that it had made other significant errors in calculating the amounts owed that affected thousands of accounts.

9. The Parties fully briefed Plaintiffs' Motion for Class Certification. Class counsel prepared and submitted extensive expert reports on the issues of fiduciary duty and class ascertainability and manageability. Plaintiffs also successfully opposed motions by Merrill to stay the case or extend class deadlines. On February 6, 2017, the Parties conducted a day-long evidentiary hearing on class issues before Magistrate Judge Torres. The Magistrate Judge did not conclude the hearing, but kept the parties on a strict discovery time frame to flesh out issues raised by Merrill Lynch in opposition to certification. In accordance with the Court's deadlines, the Parties also began drafting Motions for Summary Judgment and class-related Proposed Findings of Fact and Conclusions of Law in advance of the trial set for June 6, 2017.

10. With a comprehensive understanding of the strengths and weaknesses of Plaintiffs' case gained through extensive discovery and litigation, the Parties engaged in extensive arm's-length settlement negotiations, including two day-long mediations in Atlanta. The first mediation session, on March 3, 2017, was attended by Plaintiffs Benjamin Fernandez and Oscar Luzuriaga. The second, on March 14, was attended by Plaintiff Gustavo Martinez. The mediation sessions were held by nationally renowned class action mediator Hunter Hughes III, who mediated the *Walmart v. Dukes* case, among many other large and complicated class actions. Although those sessions did not immediately result in settlement, the Parties continued to engage in intense settlement talks through the mediator via telephone and email. Those talks ultimately resulted in a settlement term sheet on May 12, 2017. A formal Settlement Agreement was executed on June 8, 2017.

11. This case represented a significant allotment of resources by Class Counsel. LKLSG and RTN have only 15 and five attorneys, respectively. The lawsuit required

Plaintiffs and Class Counsel to commit thousands of hours toward prosecuting the case. Class Counsel have paid and agreed to pay at least $222,976.11 in expenses, including significant expert witness fees totaling more than $125,000. Those expert fees would have increased substantially had the case continued to trial.

12. Because the LKLSG attorneys who worked on this case charge their clients on an hourly basis in the majority of matters, the prosecution of this case on a contingency fee basis precluded them from taking other, hourly employment.

13. The case required an even more significant allotment of resources by the RTN firm, which has just five lawyers. Although RTN's lawyers practice primarily on a contingency fee basis, the amount of time required to prosecute this case deprived them of working on other such cases.

14. Class Counsel believe that this Settlement is extraordinary and deserving of final approval.

15. As of the date of this Declaration, Class Counsel is not aware that any Settlement Class Members have objected to the Settlement.

16. Plaintiffs and their company LAAD are longstanding clients of the RTN firm in non-class-related matters.

I declare under penalty of perjury under the laws of the United States of America, which I submit to for purposes of this testimony, that the foregoing is true and correct and that this declaration was executed this 27th day of November, 2017, in Miami, Florida.

[signature]

JASON KELLOGG

I declare under penalty of perjury under the laws of the United States of America, which I submit to for purposes of this testimony, that the foregoing is true and correct and that this declaration was executed this 27th day of November, 2017, in Miami, Florida.

FRANK R. RODRIGUEZ