# Exhibit 5

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

*Fernandez et al. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*

## DECLARATION OF ROBERT C. GILBERT

### *Qualifications and Introduction*

1.      My name is Robert C. Gilbert.  I have been licensed to practice law in the State of Florida since 1986 and in the District of Columbia Bar since 1989.  I am admitted to practice before the United States District Court for the Southern, Middle and Northern Districts of Florida, the United States Court of Appeals for the Eleventh and Ninth Circuits, and the United States Supreme Court.

2.      I am actively engaged in the practice of law in federal and state courts across Florida, the Eleventh Circuit and elsewhere throughout the United States.  I concentrate in the areas of complex litigation and class actions, including multidistrict litigation.  I have extensive experience investigating, litigating and trying complex litigation and class actions before judges and juries.

3.      I have been appointed to leadership positions in multidistrict litigation matters, including:

    a.  Plaintiffs' Coordinating Counsel, *In re Checking Account Overdraft Litigation*, MDL 2036, appointed by Judge James Lawrence King (S.D. Fla.);

    b.  Plaintiffs' Liaison Counsel, *In re 21st Century Oncology Customer Data Security Breach Litigation*, MDL No. 2737, appointed Judge Mary S. Scriven (M.D. Fla.);

    c.  Plaintiffs' Liaison Counsel, *In re Disposable Contact Lens Litigation*, MDL No. 2626, appointed Judge Harvey E. Schlesinger (M.D. Fla.); and

     d.   Plaintiffs' Liaison Counsel *In re Terazosin Hydrochloride Antitrust Litigation*, MDL No. 1317, appointed by Judge Patricia A. Seitz (S.D. Fla.).

4.      I have served as lead, co-lead, or class counsel in class actions that proceeded through contested class certification, late-stage pretrial proceedings, trial and post-judgment appeal, including:

     a.   *Swift v. BancorpSouth Bank*, No. 10-cv-90-MMP (N.D Fla.) – class certification granted, Rule 23(f) petition for interlocutory review denied, and all pretrial proceedings concluded before parties reached $24,000,000 class settlement (plus $500,000 in settlement notice and administration costs) that received final approval;

     b.   *Steen v. Capital One, N.A.*, No. 10-cv-22058-JLK (S.D. Fla.) – class certification granted, Rule 23(f) petition for interlocutory review denied, and all pretrial discovery completed before parties reached $31,700,000 class settlement that received final approval while motions for summary judgment were pending;

     c.   *Simmons v. Comerica Bank*, No. 10-cv-22958-JLK (S.D. Fla.) – class certification granted, Rule 23(f) petition for interlocutory review denied, all pretrial discovery completed before parties reached $14,580,000 class settlement that received final approval while motions for summary judgment were pending;

     d.   *Casayuran, et al. v. PNC Bank, N.A.*, No. 10-cv-20496-JLK (S.D. Fla.) – class certification granted, parties reached $90,000,000 class settlement that received final approval while motion for reconsideration of class certification order was pending;

e. *Mosser v. TD Bank, N.A.*, No. 10-cv-21386-JLK (S.D. Fla.) – class certification granted, parties reached $62,000,000 class settlement that received final approval before Rule 23(f) petition for interlocutory review fully briefed;

f. *Mendez et al. v Florida Department of Agriculture and Consumer Services et al.*, Palm Beach Circuit Court, Case No. 02-13717 AJ – class certification granted and affirmed in interlocutory appeal, case proceeded to non-jury trial on liability followed by jury trial on damages, $23,653,375 judgment affirmed on appeal;

g. *Ayers et al. v Florida Department of Agriculture and Consumer Services et al.*, Orange County Circuit Court, Case No. 05-CA-4120 - class certification granted and affirmed in interlocutory appeal, case proceeded to non-jury trial on liability followed by jury trial on damages, $31,534,721 judgment affirmed on appeal; and

h. *Smith & Estes v. First Union National Bank*, No. 00-4485-CIV (S.D. Fla.) – class certification granted, all pretrial proceedings concluded, case proceeded to trial, $5,000,000 settlement reached during first week of trial that received final approval.

5.      In addition to practicing law, I served as an Adjunct Professor at Vanderbilt University Law School in 2015, where I co-taught (with Professor Brian T. Fitzpatrick) a course on complex litigation in federal courts that focused on multidistrict litigation and class actions.  I also frequently lecture and make presentations on complex litigation and class actions and have been invited as a guest lecturer at Harvard Law School and Vanderbilt Law School, and as a panelist at the University of Miami Law Class Action & Complex Litigation Forum, Practicing Law Institute Annual Consumer Financial Services Institute, and the American Conference

Institute's National Conference on Consumer Finance Class Actions and Litigation, among others.

6.      Based on my experience, I am extremely familiar with the duties and responsibilities inherent in investigating, undertaking, litigating and trying class actions, the process of negotiating class action settlements, the class settlement approval process, and requests for attorney's fees and service awards in class actions. I am also well versed on the case law in the Eleventh Circuit regarding approval of class settlements and attorneys' fee awards.

7.      I have been asked by Class Counsel to opine regarding: (i) the proposed class action settlement embodied in the Settlement Agreement and Release (the "Settlement") between Plaintiffs Benjamin Fernandez, Gustavo Martinez and Oscar Luzuriaga, as trustees of and on behalf of the LAAD Retirement Plan and as trustees of and on behalf of the LAAD Corporation S.A. Money Purchase Retirement Plan ("Plaintiffs"), and on behalf of all others similarly situated (the "Settlement Class"), and Defendant Merrill Lynch Pierce Fenner & Smith Incorporated ("Merrill" or "Defendant"); (ii) Class Counsel's request for attorneys' fees for services rendered in the litigation; and (iii) Plaintiffs' request for service awards. Specifically, I have been asked whether: (i) the Settlement is fair, adequate and reasonable and deserving of final approval; (ii) Class Counsel's petition for an award of attorneys' fees equal to thirty-five percent (35%) of the $25,000,000 common fund secured through the Settlement is reasonable and should be approved; and (iii) whether the request for service awards for the three named Plaintiffs in their capacity as trustees for the LAAD Plans in the total amount of $150,000 is appropriate and should be approved.

8.      In order to formulate my opinions, I conferred with several of the Class Counsel to obtain specific background about this case and the Settlement.  I also reviewed the docket sheet for this action and reviewed the following materials in detail:

a.   Class Action Complaint (DE # 1);

b.   Defendant's Motion to Dismiss (DE # 17);

c.   Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion Dismiss (DE # 27);

d.   Defendants' Reply Memorandum in Support of Motion to Dismiss (DE # 33);

e.   Order Denying Defendant's Motion to Dismiss (DE # 49);

f.   Defendant's Answer and Affirmative Defenses (DE # 55);

g.   Report and Recommendation (DE # 52);

h.   Endorsed Order Adopting Report and Recommendations and Amending Scheduling Order (DE # 53);

i.   Plaintiffs' Motion for Class Certification (DE # 57);

j.   Defendant's Response in Opposition to Plaintiffs' Motion for Class Certification (DE # 68);

k.   Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification (DE # 80);

l.   Joint Status Reports and Endorsed Orders on Joint Status Reports (DE # 159, 160, 162, 163);

m.   Joint Notice of Settlement (DE # 164);

n.   Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and attached Settlement Agreement and Release (DE # 169);

o. Report and Recommendation on Order Preliminarily Approving Settlement and Providing for Notice (DE # 175);

p. Order Adopting Magistrate Judge's Report and Recommendation (DE # 176);

q. Order Setting Fairness Hearing (DE # 177);

r. Notice of Settlement; and

s. [Draft] Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Fee.

9.     As discussed below, based on my review of the foregoing materials and discussions with Class Counsel, my experience litigating, trying and settling class actions, and guiding precedent in the Eleventh Circuit, my opinion is that: (i) the Settlement is fair, adequate and reasonable and merits final approval; (ii) Class Counsel's request for attorneys' fees equal to 35% of the $25,000,000 common fund created by the Settlement is reasonable, well justified and should be approved; and (iii) the request for service awards for the three named Plaintiffs in the total amount of $150,000 is appropriate and deserving of approval.

### *Overview of the Litigation*

10.     This action was commenced in July 2015. Plaintiffs' complaint alleged that Merrill was a "fiduciary" under ERISA and asserted two claims for breach of fiduciary duty. The first claim alleged that Merrill violated its fiduciary duties under Section 404(a)(1)(A) and (B) of ERISA by failing to discharge its duties solely in the interest of the Plaintiffs' Plans' participants and beneficiaries. The second claim alleged that Merrill violated Section 404(b)(1) and (3) of ERISA by dealing with the Plaintiffs' assets in its own interest or for its own account.

6

Each claim sought damages and disgorgement of profits under Section 409(a), through ERISA's civil enforcement mechanism found at Section 502(a)(2).

11.     The essence of Plaintiffs' claims was that Merrill breached its fiduciary duty to Plaintiffs and the putative class by failing to secure fee waivers for mutual fund purchases in its small business retirement accounts.  Although Merrill later promised to repay these fees in an agreement with FINRA, and prior to this litigation repaid $79 million in mutual fund fees plus an $8 million fine to FINRA, Plaintiffs alleged that the amount Merrill agreed to pay was insufficient to fully reimburse Plaintiffs and the putative class for all excess mutual fund charges. Plaintiffs also sought disgorgement of Merrill's profits.

12.     Merrill initially moved to dismiss the complaint, principally arguing that it was not an ERISA "fiduciary," that Plaintiffs' claims were securities rather than ERISA claims, and that the claims improperly interfered with a comprehensive federal scheme of securities regulation.  In August 2016, following briefing and oral argument, the Court denied the motion to dismiss.  Shortly thereafter, the Court lifted the partial stay of discovery that had been in effect during the pendency of the motion to dismiss.  The Court also entered a revised scheduling order that established an aggressive schedule and deadlines to, *inter alia*, complete discovery, file a motion for class certification and other pretrial motions, complete mediation, and proceed to trial.  Under the revised scheduling order entered in August 2016, fact discovery was to be completed by January 20, 2017, pretrial motions were due by January 27, 2017, expert discovery was to be completed by March 3, 2017, mediation was to be completed by March 17, 2017, the joint pretrial stipulation and motions in limine were due by May 26, 2017, and trial was set for June 12, 2017.

13.     Beginning in August 2016, when the Court lifted the stay of discovery, the parties engaged in discovery.  Plaintiffs served nine discovery requests, filed six motions to compel and obtained more than 125,000 pages of financial and other documents from Merrill.  Plaintiffs received thousands of additional records by subpoenaing FINRA and some of the 106 mutual funds sold by Merrill that offered sales charge waivers.  Class Counsel and their experts analyzed these voluminous documents in preparation for deposing Merrill's employees.  Plaintiffs took five depositions of Merrill employees, prepared to take the deposition of Merrill's expert, and defended six depositions of Plaintiffs and their experts.  Class Counsel also worked closely with Plaintiffs' data expert to analyze account statements and other documents, including raw data and dozens of complex spreadsheets produced by Merrill.

14.     In October 2016, Plaintiffs filed their motion for class certification.  Merrill opposed class certification arguing, *inter alia*, that the proposed class was not ascertainable, expiration of the applicable statute of limitations barred the claims in whole or in part, and that the class was not manageable due to the vast number of customer accounts affected by the alleged errors and the different criteria for fee waivers.  The Court held a class certification hearing in February 2017, but did not rule on the motion prior to the Settlement.

15.     In April and May 2017, the parties filed a motion to stay followed by a series of joint status reports, notifying the Court that they were engaged in ongoing settlement negotiations and requesting a stay and/or a series of extensions of pending deadlines.  The Court granted a series of brief extensions through May 12, 2017, but denied the parties' request to reset all remaining pretrial deadlines if the negotiations ended in an impasse, holding the parties to the June trial date.

16.     On May 12, 2017, following two full days of mediation and continued negotiations overseen by the mediator, the parties filed a Joint Notice of Settlement, advising the Court that they had reached agreement on the terms of a full settlement, and requested sufficient time to draft and execute comprehensive settlement documents and submit them to the Court together with a motion for preliminary approval pursuant to Rule 23.  On June 8, 2017, Plaintiffs filed their motion for preliminary approval of class settlement, for certification of a settlement class, for approval of notice to the class, and for scheduling of a fairness hearing.  On September 29, 2017, the Court issued its Report and Recommendation on Order Preliminarily Approving Settlement and Providing for Notice that, *inter alia*, preliminarily approved the Settlement, approved the form of the Settlement notice, directed that the Settlement notice be disseminated within 20 days of entry of the Preliminary Approval Order, directed the settlement administrator to establish a settlement website and toll-free number to which Settlement Class members could direct questions, directed that a final approval hearing be conducted no earlier than 40 days after dissemination of the Settlement notice, established a deadline and procedures for submission of objections by Settlement Class members, and established deadlines for Plaintiffs and Class Counsel to file a brief in support of final approval, a fee and cost application, and responses to any objections to the Settlement. On October 13, 2017, the Court entered an Order Adopting Magistrate Judge's Report and Recommendation, and on October 20, 2017, entered an Order setting a fairness hearing for December 13, 2017.

17.     Based on my discussions with Class Counsel, it is my understanding that the settlement notice was timely disseminated to the Settlement Class and the settlement administrator timely established a settlement website and toll-free numbers, as directed under the Preliminary Approval Order.   The Settlement notice reasonably informed Settlement Class

members of the Settlement and their rights thereunder.  It defined the Settlement Class, described the amount of the Settlement, the method and manner of the proposed distribution to the Settlement Class, explained that Class Counsel would seek attorney's fees of no more than 35% of the $25,000,000 Settlement amount and expenses of up to $300,000, that Plaintiffs would collectively seek a $150,000 service award, informed Settlement Class members of their right to object to the Settlement and the deadline and procedures for doing so, described the release to be given to Merrill, and set forth the date, time and place of the final approval hearing.[1]  The Settlement notice also informed Settlement Class members where to obtain more information and a copy of the Settlement.

18.     Under the Settlement, Merrill agreed to pay $25,000,000 to resolve all claims raised, or that could have been raised, in the action in exchange for a reasonably-tailored release from the Settlement Class.  Merrill also agreed to pay all costs associated with notifying the Settlement Class and administering the Settlement.  The Settlement Class consists of all persons who served as trustees between January 1, 2006 and July 13, 2012, for small business retirement accounts (known as "RCMA 05 Accounts") that received or should have received the aforementioned refunds.  Settlement Class members will be paid 100% of the refunds they are due from Merrill (which total approximately $9 million, including interest) plus a *pro rata* share of the remaining funds after payment of Class Counsel's attorneys' fees and expenses and service awards to the Plaintiffs.  Settlement Class members will not have to fill out any claim forms, and will automatically be paid by direct deposits to their accounts (for current Merrill

---

[1] Pursuant to the Settlement, the Preliminary Approval Order certified the Settlement Class under Rule 23(b)(1) – a "non-opt-out" settlement – which is "common" in ERISA cases.  *See Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at * 5 (E.D. Mich. 2013).  Accordingly, the Settlement did not afford Settlement Class members the right to exclude themselves from (opt-out) the Settlement.

customers) or by mailed checks (for former Merrill customers). If any checks remain uncashed after two mailings, those monies will escheat to the respective state governments, and none of the Settlement funds will revert to Merrill.

19. The Settlement provides that Class Counsel will request, and Merrill agreed not to oppose, an award of attorney's equal to 35% of the $25,000,000 Settlement, plus reimbursement of expenses incurred in prosecuting the litigation. The Settlement also provides that Plaintiffs will seek, and Merrill will not oppose, a service award (defined in the Settlement as a Case Contribution Fee) in the total amount of $150,000 for the three Plaintiffs. The Court-awarded attorneys' fees, expenses and service award will be deducted from the $25,000,000 Settlement fund.

### *Evaluation of the Settlement*

20. Under Federal Rule of Civil Procedure 23, class actions can be settled "only with the court's approval," Fed. R. Civ. P. 23(e), and only if the settlement is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2). The court is given this responsibility because the interests of class counsel, the class representative, and the defendant can diverge from the interests of absent class members, and the court must ensure that the absent class members are treated fairly before they are bound to the agreement. "Federal courts have long recognized a strong policy and presumption in favor of class action settlements." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). In approving a class settlement, a court must determine that it is fair, reasonable and adequate, and was not the product of collusion. *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012). The Court "will not substitute its business judgment for that of the parties . . ." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1341 (quoting *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006)).

11

Rather, the Court considers "whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *Id.*

21.     Courts usually examine a number of factors in discharging this duty.   In the Eleventh Circuit, courts are directed to consider at least six factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  *Faught v. Amer. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2012); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).[2]  Consideration of these factors clearly counsels in favor of approving the Settlement.

22.     Three of these factors – (1) the likelihood of success at trial, (2) the range of possible recovery, and (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable – assess whether the settlement is a fair value in light of the risks presented by the litigation.   In other words, these factors ask the court to compare the relief called for in the settlement with the relief the settlement class might have recovered had the case gone forward, discounted by the risks of no or reduced recovery.

23.     According to Class Counsel, the $25,000,000 Settlement is comprised of two components: (i) $9,000,000 constitutes a "Corrective Remediation Payment" that represents 100% of Settlement Class members' actual out-of-pocket losses - underpaid amounts from Merrill's original FINRA settlement and interest; and (ii) $16,000,000 constitutes a "Disgorgement Payment" that represents approximately 46% of the maximum profits made by

---

[2] Although the deadline for objections to the Settlement has not yet passed, Class Counsel have indicted that no objections have been received as of this date.  The absence of any objections, or a small number of objections, is another indication that the Settlement merits final approval.

Merrill on the overcharged fees.  In my view, the "Disgorgement Payment" is akin to a penalty, like punitive damages, that are rarely achieved through a negotiated pretrial settlement and only sparingly recovered at trial.  When viewed in this context, the recovery under the Settlement is extraordinary.  For the reasons further discussed below, I believe the recovery here provides outstanding value for Plaintiffs and the Settlement Class in light of the current posture and future risks presented by the litigation.

24.    First, it was not at all clear that Plaintiffs would have won their case on the merits. Merrill contended that it was not an ERISA "fiduciary," that Plaintiffs' claims were securities rather than ERISA claims, and that the claims improperly interfered with a comprehensive federal scheme of securities regulation.  Although this Court denied Merrill's motion to dismiss, it is not clear that Plaintiffs' claims would have survived summary judgment and, if they did, whether they would have been resolved in Plaintiffs' and the class's favor at trial.  Moreover, there is no certainty that a judgment in favor of Plaintiffs and the class would have survived on appeal.

25.    Second, assuming liability was established in favor of Plaintiffs and the class, there is a question about the amount of damages that would have been recovered.  While Plaintiffs and Class Counsel claim that Merrill underpaid $9,000,000 as part of the original settlement with FINRA, Merrill did not agree with that figure and, in fact, claimed that it had already overpaid the affected account holders as part of the FINRA agreement.  Therefore, if the case proceeded to trial and the trier of fact agreed with Merrill's position, no recovery or a substantially lesser recovery was possible.  Since the $9,000,000 "Corrective Remediation Payment" represents 100% of the alleged underpayment, any lower amount awarded at trial would mean that Plaintiffs and the class achieved a lower percentage recovery at trial than they

are recovering through this Settlement.  In my experience, that is a rare occurrence in class actions and complex litigation in general.  Also, in my view, the likelihood that Plaintiffs and the class would have recovered any disgorgement damages at trial is unlikely because Merrill contended it had already disgorged millions in fees as part of the FINRA agreement.  Therefore, achieving a 46% recovery of those penalty damages through this Settlement is quite impressive.

26.     The next factor considered – (4) the anticipated complexity, expense, and duration of litigation – asks the court to assess whether the risk-recovery trade-off identified by the above factors might be further justified by the savings in time and expense that the settlement brings. At the time the Settlement was reached, the parties were completing discovery and preparing for summary judgment and other pre-trial motions, with a June 2017 trial looming on the horizon.  If Merrill's anticipated motion for summary judgment and other pre-trial motions had been denied, the parties would have had to prepare for trial, complete a trial that Class Counsel estimated would last 10-15 trial days, litigate post-trial motions, and then litigate any appeals on the merits before the Eleventh Circuit.  Assuming Plaintiffs and the class overcame all those hurdles – which was not a certainty by any means – the protracted proceedings would have significantly delayed distributions to class members for several years and would have consumed millions of dollars of Class Counsel's time.  As such, this factor further supports the Settlement.

27.     The next factor considered – (6) the stage of proceedings at which the settlement was achieved – asks the court to satisfy itself that class counsel have dug far enough into the case to know what the case is worth and to enable the court to assess what the case is worth using the factors discussed above. It is largely a procedural consideration rather than a substantive one. This case was filed in 2015 and resolved almost two years later, after the parties engaged in

14

significant discovery and were preparing final pretrial motions and for a June 2017 trial.  Thus, this case had reached an advanced stage; it was not rushed to settlement.

28.    Finally, one other factor should be considered to complete a thorough assessment of the fairness of this Settlement.  Settlement Class members will not have to submit any claim forms to receive their benefits under the Settlement.  The Settlement proceeds will automatically be distributed to all Settlement Class members.  Current Merrill customers will have their Settlement proceeds automatically deposited into their accounts, while checks will be mailed to former customers.  None of the Settlement proceeds will revert to Merrill, and the amount of any un-negotiated checks (sent to former customers) will be escheated to those former customers' respective states to be held for their benefit.  These features are yet another reason to look favorably on the Settlement.

29.    For these reasons, I believe the Settlement is, without question, fair, adequate and reasonable and deserving of final approval.

## *Application for Service Award*

30.    Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action."  *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).  Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives.  *See, e.g.*, *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the

class warrants a substantial incentive award."); *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000).

31.     The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

32.     The above factors, as applied to this case, demonstrate the reasonableness of the requested service award totaling $150,000 to the three Plaintiffs.[3]   *See, e.g., Checking Account Overdraft*, 830 F. Supp. 2d at 1357-58 ("The Court notes that the class representatives expended time and effort in meeting their fiduciary obligations to the Class, and deserve to be compensated for it.").   First, the Plaintiffs themselves uncovered what they believed was Merrill's underpayments and brought the allegations to the attention of Class Counsel.   Second, Plaintiffs were instrumental in Class Counsel's pre-filing investigation and analysis of the contemplated claims.   Third, Plaintiffs provided substantial assistance that enabled Class Counsel to successfully prosecute the case and reach the Settlement, including (1) assisting Class Counsel and their experts in analyzing their relevant statements and documents, and in reviewing documents produced by Merrill and third parties during discovery, (2) gathering and producing thousands of pages maintained by their employer, the retirement plan sponsor, in response to Merrill's discovery requests, (3) being deposed by Merrill's counsel, and (4) actively participating in the two mediation conferences that ultimately led to the Settlement. In so doing, the Plaintiffs were integral to the successful prosecution of the case and achieving the

---

[3] The Settlement defines the service award as a "Case Contribution Fee."

Settlement. Therefore, Plaintiffs not only devoted time and effort to the litigation, but the end result of their efforts, coupled with those of Class Counsel, provided a substantial benefit to the Settlement Class.

33.    If the Court approves the requested service award, the total amount will be $150,000, representing approximately 0.6% of the Settlement, a ratio in the range of what has been deemed to be reasonable. *See, e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).

34.    Based on the foregoing, I believe the request for a service award totaling $150,000 for the three Plaintiffs is reasonable and should be approved.

### Application for Attorneys' Fees

35.    In *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), the Eleventh Circuit announced that in cases where a common fund has been created, attorneys' fees were to be awarded based on a percentage of the fund that had been created for the benefit of the class, and not the lodestar method: "[h]enceforth in this [C]ircuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id*. at 774. The Eleventh Circuit noted that while twenty-five percent (25%) appeared to be the "benchmark" percentage for a fee award, that benchmark "may be adjusted in accordance with the individual circumstances of each case." *Id*. at 775.

36.    *Camden I* also concluded that, in determining the appropriate percentage, a District Court should consider the following factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

       a.   time and labor required;

b.   novelty and difficulty of the questions involved;

c.   the skill requisite to perform the legal services properly;

d.   the preclusion of other employment due to acceptance of the case;

e.   the customary fee;

f.   whether the fee is fixed or contingent;

g.   time limitations imposed by the client or the circumstances;

h.   the amount involved and the results obtained;

i.   the experience, reputation, and ability of the attorneys;

j.   the undesirability of the case;

k.   the nature and length of the professional relationship with the client; and

l.   awards in similar cases.

37.   In my opinion, an analysis of these factors – as discussed below – strongly supports Class Counsel's request for a fee equal to 35% of the $25,000,000 common fund that resulted from their efforts in this case.

**THE TIME AND LABOR REQUIRED**

38.   It is beyond legitimate dispute that substantial time and labor were required of Class Counsel in prosecuting this case.

39.   The crux of this case involved Plaintiffs' claims that Merrill short-changed approximately 28,000 customer accounts, under a settlement that Merrill negotiated with its regulator FINRA, in its repayment of amounts collected between early 2006 and mid-2012. While Merrill paid back $58 million to approximately 28,000 affected customer accounts in 2013, and paid another $21.2 million to a subset of those Settlement Class Members, Plaintiffs noticed that the amounts Merrill refunded them appeared to be less than the improper sales

18

charges they actually paid.  As a result, in 2015, Class Counsel sent a letter to Merrill requesting a full accounting of the mutual fund sales charges paid by Plaintiffs and an explanation of how the remediation payments were calculated.  Dissatisfied with Merrill's responses, Class Counsel commenced this case on behalf of Plaintiffs and a putative class in July 2015.

40.    Plaintiffs' complaint alleged that Merrill was a "fiduciary" under ERISA Section 3(21) and asserted two claims for breach of fiduciary duty.  The first claim alleged that Merrill violated its fiduciary duties under Section 404(a)(1)(A) and (B) of ERISA by failing to discharge its duties solely in the interest of the Plaintiffs' Plans' participants and beneficiaries. The second claim alleged that Merrill violated Section 404(b)(1) and (3) of ERISA by dealing with the Plaintiffs' assets in its own interest or for its own account.  Each claim sought damages and disgorgement of profits under Section 409(a), through ERISA's civil enforcement mechanism found at Section 502(a)(2).

41.    The essence of Plaintiffs' claims was that Merrill breached its fiduciary duty to Plaintiffs and the putative class by failing to secure fee waivers for mutual fund purchases in its small business retirement accounts.  Although Merrill later promised to repay these fees in an agreement with FINRA, and prior to this litigation repaid $79 million in mutual fund fees plus an $8 million fine to FINRA, Plaintiffs alleged that the amount Merrill agreed to pay was insufficient to fully reimburse Plaintiffs and the putative class for all excess mutual fund charges. Plaintiffs also sought disgorgement of Merrill's profits.

42.    It is evident from a review of the docket and selected filings, and my discussions with Class Counsel, that this matter was actively litigated.

43.    Merrill initially moved to dismiss the complaint, principally arguing that it was not an ERISA "fiduciary," that Plaintiffs' claims were securities rather than ERISA claims, and

19

that the claims improperly interfered with a comprehensive federal scheme of securities regulation. Following briefing and oral argument, the Court denied Merrill's motion to dismiss. Shortly thereafter, the Court lifted the partial stay of discovery that had been in effect during the pendency of the motion to dismiss. The Court also entered a revised scheduling order that established an aggressive schedule and deadlines to, *inter alia*, complete discovery, file a motion for class certification and other pretrial motions, complete mediation, and proceed to trial. Under the revised scheduling order entered in August 2016, fact discovery was to be completed by January 20, 2017, pretrial motions were due by January 27, 2017, expert discovery was to be completed by March 3, 2017, mediation was to be completed by March 17, 2017, the joint pretrial stipulation and motions in limine were due by May 26, 2017, and trial was set for June 12, 2017.

44.     Beginning in August 2016, after the Court lifted the stay of discovery, the parties engaged in discovery. Plaintiffs served nine discovery requests, filed six motions to compel, and obtained more than 125,000 pages of financial and other documents from Merrill. Plaintiffs received thousands of additional records by subpoenaing FINRA and some of the 106 mutual fund families sold by Merrill that offered sales charge waivers. Class Counsel and their experts analyzed these voluminous documents in preparation for deposing Merrill's employees. Plaintiffs took five depositions of Merrill employees, prepared to take the deposition of Merrill's expert, and defended six depositions of Plaintiffs and their experts. Class Counsel also worked closely with Plaintiffs' data expert analyzing account statements and other documents, including raw data and dozens of complex business procedure documents and spreadsheets produced by Merrill.

45.     In October 2016, Plaintiffs filed their motion for class certification.   Merrill opposed class certification arguing, *inter alia*, that the proposed class was not ascertainable, expiration of the applicable statute of limitations barred the claims in whole or in part, and that the class was not manageable due to the vast number of customer accounts affected by the alleged errors and the different criteria for fee waivers imposed by mutual fund companies.  The Court held a class certification hearing in February 2017, but did not rule on the motion prior to the Settlement.

46.     In April and May 2017, the parties filed a motion to stay followed by a series of joint status reports, notifying the Court that they were engaged in ongoing settlement negotiations and requesting a stay and/or a series of extensions of pending deadlines.  The Court granted a series of brief extensions through May 12, 2017, but denied the parties' request to reset all remaining pretrial deadlines if the negotiations ended in an impasse, holding the parties to the June trial date.

47.     On May 12, 2017, following two full days of mediations and continued negotiations overseen by the mediator, the parties filed a Joint Notice of Settlement, advising the Court that they had reached agreement on the terms of a full settlement, and requested sufficient time to draft and execute comprehensive settlement documents and submit them to the Court together with a motion for preliminary approval pursuant to Rule 23. On June 8, 2017, Plaintiffs filed their motion for preliminary approval of class settlement, for certification of a settlement class, for approval of notice to the class, and for scheduling of a fairness hearing.  On September 29, 2017, the Court issued its Report and Recommendation on Order Preliminarily Approving Settlement and Providing for Notice that, *inter alia*, preliminary approved the Settlement, approved the form of the proposed Settlement notice, directed that the Settlement notice be

disseminated within 20 days of entry of the Preliminary Approval Order, directed the settlement administrator to establish a settlement website and toll-free number to which Settlement Class members could direct questions, directed that a final approval hearing be conducted no earlier than 40 days after dissemination of the settlement notice, established a deadline and procedures for submission of objections by Settlement Class members, and established deadlines for Plaintiffs and Class Counsel to file a brief in support of final approval, a fee and cost application, and responses to any objections to the Settlement. On October 13, 2017, the Court entered an Order Adopting Magistrate Judge's Report and Recommendation, and on October 20, 2017, entered an Order setting a fairness hearing for December 13, 2017.

48.     Undoubtedly, the time and labor required and expended by Class Counsel warrant the requested fee of 35% of the $25,000,000 common fund.[4]

### THE NOVELTY AND DIFFICULTY OF THE QUESTIONS INVOLVED

49.     This factor, along with the results obtained, are the most compelling factors supporting the attorneys' fees requested in this case.   The novelty and difficulty of the issues involved in this class action posed significant risks for Class Counsel.

50.     It was not at all clear that Plaintiffs would have prevailed on the merits.   Merrill contended that it was not an ERISA "fiduciary," that Plaintiffs' claims were securities rather than

---

[4] "[I]n the Eleventh Circuit, 'the lodestar approach should not be imposed through the back door via a 'cross-check.'" *Wilson v. EverBank*, No. 14-cv-22264, 2016 WL 457011, at *13 (S.D. Fla. Feb. 3, 2016) (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011)).   The Eleventh Circuit "made clear in *Camden I* that percentage of the fund is the *exclusive* method for awarding fees in common fund class actions." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362 (emphasis added) (citing Alba Conte, ATTORNEY FEE AWARDS § 2.7, at 91 n.41 ("The Eleventh . . . Circuit[ ] repudiated the use of the lodestar method in common-fund cases.")).   Thus, "courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." *Id.* at 1363; *see also Reyes v. AT&T Mobility Servs., LLC*, No. 10-20837, at *6 (S.D. Fla. Jun. 21, 2013) (Cooke, J.); *In re Takata Airbag Prods. Liability Litig.*, No. 15-02599, at *9-10 (S.D. Fla. Nov. 1, 2017).

ERISA claims, and that the claims improperly interfered with a comprehensive federal scheme of securities regulation.  Although the Court denied Merrill's motion to dismiss, it is not clear that Plaintiffs' claims would have survived summary judgment and, if they did, whether they would be resolved in Plaintiffs' and the class's favor at trial.  Moreover, there is no certainty that a judgment in favor of Plaintiffs and the class would have survived on appeal.

51.     Assuming liability was established in favor of Plaintiffs and the class, Plaintiffs would have still faced difficult questions at trial about the amount of damages that would have been recovered.  While Plaintiffs and Class Counsel claim that Merrill underpaid $9,000,000 as part of the original agreement with FINRA, Merrill did not agree with that figure and, therefore, a lesser recovery at trial was possible.  Also, there is a serious question in my view about whether Plaintiffs and the class would have recovered any disgorgement damages at trial. Through the Settlement, Class Counsel recovered $16,000,000 in disgorgement damages, representing approximately 46% of the potential disgorgement damages under Class Counsel's projections (Merrill disputed this amount as well).

52.     The bottom line is that this case presented a host of difficult questions – any one of which could have resulted in an adverse outcome – such that Class Counsel undertook significant risk when accepting this representation.

### THE REQUISITE SKILL TO PERFORM THE LEGAL SERVICES PROPERLY, AND THE REPUTATION AND EXPERIENCE OF THE ATTORNEYS

53.     There can be no doubt that this action required a high level of skill to perform the legal services required.  Indeed, this case was ripe with numerous legal hurdles, any one of which could have prevented Class Counsel from reaching the finish line.  I believe that only excellent attorneys could have navigated the path to a favorable resolution.

54.     I am familiar with the experience of Class Counsel and it comes as no great surprise to me that they managed to resolve this matter favorably for the Settlement Class. Working together, this team of lawyers accomplished outstanding results in the face of substantial risks.  Had they not had the requisite skill to perform the necessary services, it is highly doubtful Class Counsel could have achieved the results obtained in this case.

**PRECLUSION OF OTHER EMPLOYMENT BECAUSE OF THIS CASE**

55.     This matter obviously required Class Counsel to commit a substantial amount of time – which is particularly noteworthy given that the two firms involved are not large.  I understand from my discussions with Class Counsel that because this case has taken up so much time, they were required to turn away other work that they otherwise would have accepted.  This, in my opinion, is not surprising given the complexity and difficulty of the issues involved, as well as the amount at stake.

**THE CUSTOMARY FEE**

56.     In individual (non-class) commercial contingency cases such as this one, the customary fees agreed between client and counsel generally range between 30% to 50%, depending on the stage of proceedings when the case is resolved.  Therefore, in my opinion, the requested fee of 35% is well within the range of customary fees for similar cases in our community based on the nature of the case, the stage when this case was resolved, and the results achieved.

**A CONTINGENT OR FIXED FEE**

57.     This case, like virtually all class actions, was undertaken on a contingency fee basis.  Class Counsel spent a substantial amount of their time and advanced significant dollars in expenses without receiving any compensation.  And they easily could have lost this case for any

of a number of reasons.  Instead, they achieved a recovery of $25,000,000.  Given their hard work and the outstanding results obtained, it is now time that they be compensated appropriately.

TIME LIMITATIONS

58.     This class action was filed in July 2015 and resolved in just under two years.  In August 2016, following briefing and oral argument, the Court denied the motion to dismiss. Shortly thereafter, the Court lifted the partial stay of discovery that had been in effect during the pendency of the motion to dismiss.  The Court also entered a revised scheduling order that established an aggressive schedule and deadlines to, *inter alia*, complete discovery, file a motion for class certification and other pretrial motions, complete mediation, and proceed to trial.  Under the revised scheduling order entered in August 2016, fact discovery was to be completed by January 20, 2017, pretrial motions were due by January 27, 2017, expert discovery was to be completed by March 3, 2017, mediation was to be completed by March 17, 2017, the joint pretrial stipulation and motions in limine were due by May 26, 2017, and trial was set for June 12, 2017.

59.     Beginning in August 2016, the parties engaged in substantial discovery.  Plaintiffs served nine discovery requests, filed six motions to compel and, as a result, obtained more than 125,000 pages of financial and other documents from Merrill.  Plaintiffs received thousands of additional records by subpoenaing FINRA and some of the 106 mutual fund families sold by Merrill that offered sales charge waivers.  Class Counsel and their experts analyzed these voluminous documents in preparation for deposing Merrill's employees.  Plaintiffs took five depositions of Merrill employees, prepared to take the deposition of Merrill's expert, and defended six depositions of Plaintiffs and their experts.  Class Counsel also worked closely with

25

Plaintiffs' data expert to analyze account statements and other documents, including raw data and dozens of complex spreadsheets produced by Merrill.

60.     In October 2016, Plaintiffs filed their motion for class certification.   Merrill opposed class certification.  The Court held a class certification hearing in February 2017, but did not rule on the motion prior to the Settlement.

61.     In April and May 2017, the parties filed a motion to stay followed by a series of joint status reports, notifying the Court that they were engaged in ongoing settlement negotiations and requesting a stay and/or a series of extensions of pending deadlines.  The Court granted a series of brief extensions through May 12, 2017, but denied the parties' request to reset all remaining pretrial deadlines if the negotiations ended in an impasse, holding the parties to the June trial date.

62.     On May 12, 2017, the parties filed a Joint Notice of Settlement, advising the Court that Plaintiffs and Merrill had reached agreement on the terms of a full settlement on behalf of Plaintiffs and the Settlement Class. On June 8, 2017, Plaintiffs filed their motion for preliminary approval of class settlement, for certification of a settlement class, for approval of notice to the class, and for scheduling of a fairness hearing.

63.     Generally, complex cases like this one take a long time to resolve.  It is, however, clearly preferred in this District for cases to be resolved as efficiently and expeditiously as possible.  Based on my review of the record before this Court, and my conversations with Class Counsel, I am of the opinion that this case was litigated efficiently and expeditiously.

## AMOUNT INVOLVED AND RESULTS OBTAINED

64.     The amount involved and excellent results obtained through the Settlement, when coupled with the risks undertaken by Class Counsel, are perhaps the most significant factors to be considered when assessing Class Counsel's fee request.

65.     The Settlement created a common fund in the amount of $25,000,000.  According to Class Counsel, the $25,000,000 Settlement is comprised of two components: (i) $9,000,000 constitutes a "Corrective Remediation Payment" that represents 100% of Settlement Class members' actual out-of-pocket losses - underpaid amounts from Merrill's original FINRA settlement, and interest; and (ii) $16,000,000 constitutes a "Disgorgement Payment" that represents approximately 46% of the maximum profits made by Merrill on the overcharged fees.  In my view, the "Disgorgement Payment" is akin to a penalty, like punitive damages, that are rarely achieved through a negotiated pretrial settlement and only sparingly recovered at trial.   When viewed in this context, the results obtained are extraordinary.

66.     I am of the opinion that the results obtained by Class Counsel through this Settlement are excellent.  Accordingly, Class Counsel should be commended and appropriately compensated for achieving such an outstanding result.

## THE UNDESIRABILITY OF THE CASE

67.     It is noteworthy that during the entire time this action was pending, no other firms attempted to bring suit against Merrill to recover under the same or similar theory on behalf of a putative class.  Clearly, the legal marketplace perceived this case as undesirable – which is not surprising because of the number of significant legal risks it presented.  Class Counsel are the only lawyers who risked their reputations and the allocation of their resources on behalf of the

Settlement Class.  That Class Counsel did so in light of the significant risks presented further

counsels in favor of their fee request.

### THE NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHIP WITH THE CLIENT

68.     In some cases, having a longstanding or strong relationship with a client justifies

accepting a case with significant risks because other benefits may come from the relationship.  In

this case, it is my understanding that one of the Class Counsel firms had a prior attorney-client

relationship with the named Plaintiffs.  That prior relationship, however, did not militate in favor

of undertaking this risky, untested litigation on a fully contingent basis, and the pre-existing

relationship did not make it more likely that any other benefit would result from the

representation.

### AWARDS IN SIMILAR CASES

69.     Based on my experience, I believe that Class Counsel's fee request of 35% of the

$25,000,000 common fund is within the range of other fee awards in class actions in this District

and Circuit, including:

a.     *Barba v. Shire U.S., Inc.*, No. 13-cv-21158, at 11 (S.D. Fla. 2016) (35% fee awarded on settlement of $15.4 million);

b.     *Swift v. BancorpSouth Bank*, No. 10-cv-90-MMP (N.D Fla. 2016) (35% fee awarded on settlement of $24 million);

c.     *Soto v. The Gallup Org., Inc.*, No. 13-cv-61747, at *8 (S.D. Fla. 2015) (Cooke, J.) (33.3% fee awarded on settlement of $12 million);

d.     *Reyes v. AT&T Mobility Servs., LLC*, No. 10-20837, at *6 (S.D. Fla. 2013) (Cooke, J.) (33.3% fee awarded on settlement of $3.2 million);

e.     *In re Checking Account Overdraft Litigation*, 830 F.Supp. 2d 1330, 1358-68 (S.D. Fla. 2011) (30% fee awarded on settlement of $410 million);

f.     *Allpatattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp. 2d 1185 (S.D. Fla. 2006) (31.3% fee awarded on settlement of $1.06 billion);

28

      g.     *In re Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL-Seitz (S.D.Fla. 2005) (33.3 % fee awarded on settlement of over $30 million);

      h.     *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-CIV-Gold (S.D. Fla. 2003) (33.3% fee awarded on $77.5 million settlement);

      i.     *In re Managed Care Litig.v. Aetna*, 2003 WL 22850070 (S.D. Fla. 2003) (33.5% fee awarded on settlement of $100 million);

      j.     *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (33.3% fee affirmed on settlement of $40 million); and

      k.     *Tapken v. Brown*, 90-0691-CIV-Marcus (S.D. Fla. 1995) (33% fee awarded on $10 million settlement).

## *Conclusion*

70.     In conclusion, based on my experience and assessment of the Settlement and the record as a whole, I am of the opinion that: (i) the Settlement is, without question, fair, adequate and reasonable and merits final approval; (ii) the request for service award totaling $150,000 for the three Plaintiffs is warranted and well-justified and consistent with service awards in analogous cases; and (iii) Class Counsel's fee request of 35% of the $25,000,000 common fund is reasonable and well justified.  Class Counsel undertook a risky case, one perceived as undesirable by the rest of the legal marketplace, and through their diligence, perseverance and skill, obtained an outstanding result.  Class Counsel are to be commended for such an excellent result, and should be compensated in accord with their request because it is warranted and reasonable.

71.     My compensation in this matter is based on my hourly rate of $750 per hour.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 27, 2017.

                              *Robert C. Gilbert*
                              Robert C. Gilbert