UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-22782-Civ-COOKE/TORRES

BENJAMIN FERNANDEZ, *et. al.*,

    Plaintiffs,

vs.

MERRILL LYNCH, PIERCE,
FENNER & SMITH INCORPORATED,

    Defendant.

_____/

## ORDER APPROVING SETTLEMENT

    Plaintiffs Benjamin Fernandez, Gustavo Martinez, and Oscar Luzuriaga, as trustees of and on behalf of the LAAD Retirement Plan, and as trustees of and on behalf of the LAAD Corporation S.A. Money Purchase Retirement Plan ("Plaintiffs") and Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Defendant") entered into a proposed settlement embodied in a Settlement Agreement and Release ("Settlement Agreement").[1] On October 13, 2017, I preliminarily approved the Settlement and ordered that notice be sent to all Settlement Class Members. A fairness hearing was held on December 13, 2017.

    Now before me is Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Fee (ECF No. 182). Having reviewed and considered Plaintiffs' Motion, the affidavits and other submissions of the Parties, the record, and the relevant legal authorities, it is hereby **ORDERED AND ADJUDGED** as follows:

    1.    Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Fee (ECF No. 182) is **GRANTED**. This Court now finally approves the Settlement and the certification of the Settlement Class as more fully set forth below.

---

[1] All terms herein shall have the same meaning as used in the Settlement Agreement.

2. Under Federal Rule of Civil Procedure 23(e)(2), a court may approve a settlement in class action litigation only if it finds that the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). To evaluate the fairness of a settlement, a court considers the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

3. Here is it not at all clear that Plaintiffs would have succeeded at trial. Their claims were highly complex. Defendant argued that Plaintiffs' claims were wholly time-barred by the applicable statute of limitations and that Defendant owed no fiduciary duty to Plaintiffs under ERISA. If successful on either of these arguments, Defendant would have been entitled to a take-nothing judgment. Defendant challenged Plaintiffs' standing on the ground that the plans did not invest in each of the mutual funds sold to Settlement Class Members, and Defendant contended that Plaintiffs could represent only those plans that invested in the same mutual funds purchased by the Plaintiffs' plans. Had Defendant's standing argument prevailed, it would have greatly curtailed the scope of this action and those receiving relief. Defendant further challenged the categorization of "profits" sought by Plaintiffs, and had its arguments been successful, it would have significantly reduced Plaintiffs' and Settlement Class Members' disgorgement recovery. Further, the Court had not yet ruled on Plaintiffs' motion for class certification, and it is not clear that Plaintiffs would have succeeded in certifying a class.

4. The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002). "In considering the question of a possible recovery, the focus is on the possible recovery at trial." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014). Courts should evaluate the "proposed settlement in its totality." *Id*. Here, the recovery for the Settlement Class makes Settlement Class Members whole by paying them 100% of their losses. It includes accounts that were incorrectly excluded from Defendant's initial payments, and gives the Settlement Class

Members additional recovery in disgorged profits—even after attorney's fees, expenses, taxes and Plaintiffs' Case Contribution Fee are deducted. This very likely exceeds what Plaintiffs could have won at trial, had they prevailed, and easily meets the reasonable range requirement.

5. This Court is well aware of the likely complexity, length, and expense of continued litigation. Class Counsel have substantial experience in complex class action litigation and are well-qualified to assess the value of Plaintiffs' claims. The Parties have devoted substantial resources to this litigation already. For instance, discovery included six motions to compel, eleven depositions, and review of more than 125,000 pages of documents and dozens of complex spreadsheets. Class Counsel also hired two highly qualified experts, including a data scientist who assisted in the analysis of those complex spreadsheets that Defendant had previously submitted to its regulator. Moreover, there are substantial risks, expenses and uncertainty likely in the event that this action is not settled. Furthermore, the parties retained a highly qualified ERISA lawyer as their private mediator to assist them in negotiating the Settlement. The Parties were well-represented by highly experienced counsel with class and complex litigation experience, and counsel have represented to this Court that they recommend the fairness of the Settlement. Consideration of this factor weighs in support of the fairness of the Settlement.

6. At the time they settled with the assistance of an experienced mediator, the Parties had completed fact discovery, had briefed and argued Plaintiffs' class certification motion, and were within days of filing cross-motions for summary judgment. They had retained experts and were facing a trial with the likelihood of appeals. Consideration of the status of the litigation militates in favor of approval of the Settlement.

7. The Settlement Agreement required establishing a toll-free telephone line to address questions and objections to the Settlement. Moreover, Settlement Class Members could submit objections to the Court and the Parties by mail and appear at the Fairness Hearing to lodge any complaints. There was no opposition to the Settlement. Of the 38,909 Settlement Class Members, none objected. This weighs in favor of approving the settlement.

8. The Court further recognizes that the stage of the proceedings, i.e., completion of fact discovery, completion of expert reports, and briefing and argument on Plaintiffs' class certification motion, followed by two full days of mediation with an

experienced ERISA mediator, also supports the fairness of the Settlement. The Parties were well-positioned to assess the value of Plaintiffs' claims and Defendant's defenses.

9.  Accordingly, the Court hereby approves and confirms the Settlement embodied in the Settlement Agreement as constituting a fair, reasonable, and adequate settlement and compromise of this action in accordance with applicable law, including Rule 23, and orders that the Settlement Agreement shall be effective, binding, and enforced according to its terms and conditions.

10. For the reasons articulated in Judge Edwin G. Torres' Report and Recommendation on Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 175), adopted as Order of this Court (ECF No. 176), the Court also finally approves the Settlement Class under Rule 23(b)(1), which consists of the trustees and named fiduciaries of each Plan:

    a. that, at any time between January 1, 2006 and July 13, 2012, held any interest in one or more RCMA 05 Accounts, whether

        i. in the name of the Plan, or

        ii. in the name of a trustee or named fiduciary on behalf of the Plan, or

        iii. for the benefit of a Participant in the Plan; and

    b. that either

        i. received, or was issued, whether for the benefit of the Plan or a Participant in the Plan, a Remediation Payment in any amount, or

        ii. held an interest in an Omitted Remediation Account.

11. Settlement Notice, in the form previously approved by the Court, was sent by email or first class mail to the last known addresses of the Settlement Class Members, and reasonable efforts were made to re-send notices to those Class members whose notices were returned as undeliverable. The Settlement Notice constitutes the best notice practicable under the circumstances and fully complies with and satisfies the notice requirements of Federal Rule of Civil Procedure 23, due process, the United States Constitution and applicable law. The Court determines that the Settlement Notice reasonably apprised the Settlement Class Members of the nature and pendency of this lawsuit and the claims made

herein; the class definition; the material elements of the proposed settlement; the binding effect of the settlement; Settlement Class Members' right to object to the proposed settlement, along with information regarding the time and manner for doing so; the date, time, and location of the final Fairness Hearing; Settlement Class Members' right to appear at the fairness hearing (including through an attorney) and speak regarding the proposed settlement; and the identity of Class Counsel and how to contact them with any questions. Full opportunity has been afforded to Settlement Class Members to be heard and to participate in the Fairness Hearing.

12. Pursuant to the Settlement Agreement, the total payment by Defendant is $25,000,000 ("Settlement Amount"). The Settlement Amount will be used to pay the following amounts associated with the Settlement: (a) Compensation to Settlement Class Members determined in accordance with Paragraph 4.2 and Section IX of the Settlement Agreement; (b) the Case Contribution Fee; (c) Attorneys' Fees and Reimbursable Expenses; and (d) Taxes and Tax-Related Costs imposed on Settlement funds held by the Settlement Administrator. Defendant shall pay the Settlement Administrator directly for any other Administrative Costs.

13. This Court hereby approves Plaintiffs' request for a Case Contribution Fee in the amount of $150,000, which shall be paid out of the Settlement Amount. This Case Contribution Fee is reasonable in light of the efforts that Plaintiffs expended in furthering the interests of the Class. Plaintiffs are retirement plan trustees who first investigated potential overcharges in their own accounts and then retained counsel and pursued this litigation vigorously in an effort to obtain the maximum recovery, both for themselves and for the Settlement Class Members. Plaintiffs actively investigated potential overcharges on their own, then sought counsel, participated in and monitored the lawsuit including providing extensive discovery relating to their own retirement plans, sat for depositions and participated in mediation.

14. The Court further approves the Plan of Allocation as fair and reasonable. Each Settlement Class Member's Settlement Payment will include the entire amount of that Settlement Class Member's Corrective Remediation Payment as calculated by Defendant pursuant to Paragraph 9.1 of the Settlement Agreement. The portion of the Distributable Settlement Amount exceeding the total of Corrective Remediation Payments shall be

considered disgorgement and restoration of profits within the meaning of ERISA § 409(a), 29 U.S.C. § 1109(a). Each Settlement Class Member's Disgorgement Payment shall be calculated by the Settlement Administrator pursuant to Paragraph 9.2 of the Settlement Agreement.

15. Class Counsel have requested an award of attorneys' fees to them in the amount of $8,750,000. As part of the Settlement, Defendant agreed not to dispute a request for attorneys' fees not exceeding 35% of the Settlement Amount. This Court has considered the requested fees in light of the value of the relief obtained for the Settlement Class and finds that Class Counsel have achieved more than some degree of success on the merits, as described in *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242, 245 (2010). The requested fee amount of $8,750,000 constitutes 35% of the Settlement Amount. That is fair and reasonable using the "percentage of recovery" method, which is the standard in the Eleventh Circuit. *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). The fairness and reasonableness of the award is supported by the declarations of Professor Brian T. Fitzpatrick of Vanderbilt University Law School and Robert C. Gilbert, Esq. of the Kopelowitz Ostrow law firm, as well as a Joint Declaration of Class Counsel outlining the significant resources expended by Class Counsel in prosecuting this action, which was undertaken on a contingency fee basis and precluded Class Counsel from taking other hourly employment.

16. Courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund. *See*, *e.g.*, *Barba v. Shire U.S., Inc.*, No. 13-cv-21158, at 11 (S.D. Fla. Dec. 2, 2016) (awarding attorneys' fees of 35% of the settlement fund in a consumer protection class action where the litigation was "very hard fought," complex, and required a considerable amount of effort); *Reyes, et al. v. AT&T Mobility Servs., LLC*, No. 10-20837, at 6 (S.D. Fla. Jun. 21, 2013) (Cooke, J.) (awarding 1/3 of the total maximum settlement fund, noting that the award was consistent with the trend in this Circuit); *Waters v. Cook's Pest Control, Inc.*, No. 2:07-00394, 2012 WL 2923542, at *17-19 (N.D. Ala. Jul. 17, 2012) (awarding fees of 35% in a Title VII class action based on the complexities of the case, including complex discovery issues, where "defense counsel presented a vigorous defense at every stage of the case, requiring multiple hearings on motions to quash and motions for

protective orders"); *In re: Terazosin Hydrochloride Antitrust Litigation*, No. 99-1317 (S.D. Fla. Apr. 19, 2005) (awarding fees of 33 1/3% of settlement of over $30 million); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3% of settlement of $77.5 million); *see also Stephens v. US Airways Group, Inc.*, 102 F. Supp. 3d 222, 230-31 (D.D.C. 2015) (awarding 38% of the settlement fund in an ERISA class action where the case was highly complex and class counsel "achieved an excellent recovery for class members"). "To avoid depleting the funds available for distribution to the class, an upper limit of 50% may be stated as a general rule, although even larger percentages have been awarded." *Camden I*, 946 F.2d at 774-75. Here, the requested fee award falls well within that range. The requested fee also falls within the range of the customary fee in the private market place, where 40 percent fee contracts are common for complex cases such as this. *See*, *e.g.*, *In re: Checking Account Overdraft Litig*, No. 1:09002036, 2013 WL 11319391, at *18 (S.D. Fla. Aug. 5, 2013) ("Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal 40 percent of any recovery.").

17. Class Counsel is awarded $222,976.11 for costs and expenses incurred in this litigation, to be paid from the Settlement Amount. Courts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses. *See*, *e.g.*, *In re Checking Account Overdraft Litig.*, No. 1:09-02036, 2015 WL 12641970, slip op. at *18 (S.D. Fla. May 22, 2015); *Gevaerts v. TD Bank*, No. 11:14-cv-20744, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015).

18. The Parties have complied with the requirements of the Class Action Fairness Act ("CAFA"). Defendant served Notice of the Settlement upon the appropriate officials as required by CAFA, 28 U.S.C § 1715. None of the officials objected. "These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval." *Braynen v. Nationstar Mortg., LLC*, 14-CV-20726, 2015 WL 6872519, at *6-7 (S.D. Fla. Nov. 9, 2015).

19. Upon entry of this Final Approval Order, all Settlement Class Members, on behalf of themselves, their predecessors, successors and assigns, in their fiduciary capacities for the Plans and, to the extent any Settlement Class Members are also Participants in the Plans, as Participants in the Plans, and for all beneficiaries of and Participants in the Plans,

shall be deemed to have, irrevocably, absolutely, unconditionally, fully, finally, and forever release the Defendants' Released Parties from any and all Released Claims that such persons or entities directly, indirectly, derivatively, or in any other capacity ever had or have based upon, related to, arising out of or in connection with the claims and allegations asserted in the Complaint.

20.   Further, upon entry of this Final Approval Order, Plaintiffs and the Settlement Class Members release, relinquish, waive, and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Upon entry of this Final Approval Order, Plaintiffs and Settlement Class Members also expressly waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by any similar law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar to Section 1542 of the California Civil Code. Plaintiffs or Settlement Class Members may hereafter discover facts other than or different from those that they know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs and the Settlement Class Members hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the Released Claims, without regard to the subsequent discovery or existence of such other or different facts.

21.   Plaintiffs and the Settlement Class Members are hereby restrained and enjoined from instituting, maintain, prosecuting, or asserting any Claim, cause of action, or demand on the basis of, connected with, or arising out of the Released Claims, whether arising before or after the date of the Final Order and Judgment, against any and all of Defendant's Released Parties. Nothing herein shall bar any claim seeking enforcement of this Settlement Agreement, the Preliminary Approval Order, or this Final Approval Order.

22. This Court retains exclusive jurisdiction over the interpretation, enforcement, and implementation of the Settlement Agreement, including, but not limited to, any issues regarding the Parties and the Released Claims.

23. The Court hereby dismisses the Complaint and the Action against Defendant with prejudice on the merits.

**DONE and ORDERED** in Chambers, Miami, Florida, this 18th day of December 2017.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*